12 | 195
99 | 446
12 | 195
107 | 655
12 | 195
124 | 726

</div>

No. 33.—Oliver P. Fears, trustee, &c. plaintiff in error, *vs.* William Brooks, assignee, &c. defendant.

[1.] A separate estate may be created in a *feme sole*, as well as a married woman, which, after marriage, will be good against the husband's marital right.

[2.] A separate estate may exist without the intervention of a trustee. The husband will, in that case, take the legal estate, but Equity will regard him as trustee for his wife.

[3.] No particular form of words is necessary to create a separate estate. It may be declared in express terms, or it may be inferred from the provisions and directions, as to the mode of enjoyment, and of management of the property.

[4.] A married woman is a *feme sole*, as to her separate estate, and may dispose of it, unless restrained in the settlement ; and it is no objection to the validity of the restriction, that it was made when she was unmarried.

[5.] If a separate estate is created by will, the intention to restrain alienation, may be collected from all the provisions of the will, and if clearly made out, will be enforced.

[6.] A. left the *residuum* of his estate equally among his children, and directs that the shares of his daughters be paid by his executor to a trustee, afterwards named in the will, for their use. He then appoints a trustee, and directs him "to receive from and receipt to my executors, for the distributive share due to each of my daughters, and to be vested by him in such property as, in his judgment, may be most conducive to their comfort and interest, and to have the title to such investment made to him, as trustee, for their use and benefit." *Held,* that a separate estate was created in his daughters, and that the power of alienation was restrained.

In Equity, in Troup Superior Court. Tried before Judge HILL, June Term, 1852.

This case arose out of the following state of facts : In 1847, Andrew Hall made his will, in which, after sundry bequests, he directs that the residue of his estate be equally divided among his nine children ; the shares of his daughters " to be paid over by my executors to the trustee hereafter appointed, for their use." The seventh item of the will was as follows : "I hereby nominate and appoint my friend, Oliver P. Fears, of this County, to be the trustee for my daughters, (naming them) to receive from, and receipt to my executors, for the distributive share due to each of my daughters, and to be vested by him, in such property as, in his judgment, may be most conducive to their comfort and interest, and to have the titles to such investment made to him as trustee for their use and benefit."

After the death of the testator, his daughter, Amanda, intermarried with one Wm. G. Cate, who assigned the share of his wife in her father's estate (which was in the hands of the trustee under the will,) to William Brooks.

Brooks, the assignee, filed his bill against Fears, the trustee, setting forth the above facts, and seeking to have the property turned over to him.

To this bill, Cate and his wife were made parties complainants.

On demurrer, for want of Equity, the Court, on hearing argument, overruled the same, and ordered defendant to answer.

To which decision defendant excepts.

BULL and FERRELL, for plaintiff in error.

BEN. HILL, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

Whether the demurrer to the bill ought to be sustained or not, depends upon two questions.

*First*—Does the will create a separate estate in the testator's daughter? If it does not, upon her marriage, the property left to her, vested in her husband by the marital right, and his assignment of it to Brooks, the complainant, was good.

*Second*—If the will creates a separate estate in the daughter, does it at the same time restrain her power of alienation? If it does not, as she joined with her husband in the assignment to Brooks, his title is good, and he ought to recover.

[1.] As to the first, I remark, that a separate estate may be made in a *feme sole*, as well as in a married woman, which, upon marriage, will be good against the marital right; and this, although no particular marriage be in contemplation. Upon marriage, the trust will immediataly attach upon the property, so as to exclude the husband's title, although no further settlement be executed. *Anderson vs. Anderson*, 2 *M. and R.* 427. *Davis vs. Thorneycrof*, 6 *Sim.* 420. *Tullett vs. Armstrong*, 1 *Beav.* 1. 4 *M. and Cr.* 390. *Scarborough vs. Bowman*, 1 *Beav.* 34. 4 *M. and Cr.* 377.

The contrary was held by Lord *Cottingham, in Massey vs. Parker*, 2 *M. and R.* 174. In that case, it was ruled, that when property is given or settled to the separate use of an unmarried woman, it vested in her husband upon her marriage. In the subsequent cases of *Tullett vs. Armstrong* and *Scarborough vs. Bowman*, his decision was overruled; and in affirming these decisions on appeal, Lord *Cottingham* overruled himself. 4 *M. and Cr.* 377. So the doctrine is to be considered settled, as first stated.

[2.] The interposition of a trustee to protect the separate estate, was at first deemed essential, because the interest of a married woman is the subject only of equitable cognizance. *Harvey vs. Harvey*, 1 *P. Williams*, 125. *S. C. 2 Vern.* 659. *Barton vs. Pierpont*, 2 *P. Williams*, 79. It is, however, now settled that a separate estate may exist, without the intervention of trustees. In that case, the husband will take the legal interest, but Equity will treat him as a trustee for his wife. *Bennet vs. Davis*, 2 *P. Will.* 316. *Darley vs. Darley*, 3 *Ath.* 399. *Lee vs.*

*Prideaux,* 3 *Bro. C. C.* 383.    *Parker vs. Brooke,* 9 *Vesey,* 583.
*Major vs. Lansley,* 2 *R. and M.* 355.

The better course is to provide a trustee.   2 *Roper. H. and W.* 152.   In this case, the testator appointed a trustee.

[3.] My next proposition is, that no particular form of words is necessary to create a trust for a *feme's* separate use.   It may be declared in express terms, or it may be inferred, from the provisions or directions as to the mode of enjoyment, or management of the property.   *Hill on Trustees,* 420.   *Stanton vs. Hall,* 2 *R.* and *M.* 180.   *Tyler vs. Lake, Ib.* 188.

The intention, however, to create a separate estate must be clearly expressed.   Lord *Brougham* held, in *Tyler vs. Lake* (2 *R. and M.* 189,) that the expressions must be such as " leave no doubt of the intention, and which forbid the Court to speculate on what the probable object of the donor might have been." Taking this stringent rule as our guide, we think that a separate estate was created by the will now under consideration, and that there really is no room to speculate about what the object of the father was, in the provision which he made for his daughter.   There are two clauses of the will which bear upon the question.   The testator, Andrew Hall, divides the *residuum* of his estate equally among his nine children, and directs that " the shares of his daughters be paid over, by his executors, to the trustee afterwards appointed, for their use."   The seventh item of the will appoints Mr. Fears trustee for his daughters, one of whom, Amanda, after his death, intermarried with Cate, who assigned her interest in the estate to Brooks, the complainant.   The duties of the trustee, he proceeds to define thus—" to receive from and receipt to my executors for the distributive share due to each of my daughters, and to be vested by him in such property as, in his judgment, may be most conducive to their comfort and interest, and to have the titles to such investment made to him, as trustee, for their use and benefit."

It is conceded that the limitation implied in the words, *to their use and benefit,* will not alone make this a separate estate.   A limitation to the *separate* or *sole* use of a *feme* has been held sufficient.   1 *Beav.* 34.   4 *M. and Cr.* 377.   The testator clothes the trus-

tee with the legal estate of each daughter's share, and puts him in possession and also authorizes and directs him to invest it in such property as, in his judgment, may be most conducive to their comfort and interest, and requires the title of the property when bought, to be made to him, as trustee, for their use and benefit. From the mode of managing the share of his daughter, prescribed by the testator, to her trustee, we infer, necessarily, that the estate was intended for her separate use. The testator intended that it should be held by the trustee, for her use, against the right or title which a future husband might acquire by marriage. This is consonant with the reason of the thing. Not only is the fund left with him, to be invested according to his discretion, with reference to the comfort and interest of his daughter, but he is required to have the title to the instrument made to him, as trustee, for her use. This direction unequivocally indicates the purpose of the father to create a trust, and to hold it up, that his daughter might be the sole beneficiary of his bounty. The very thing which seems to be guarded against is a title and management of the property, in any body else. No doubt the title of a future husband was just what he had in view. The right of investment (and of re-investment, which we think is implied,) and the directed tenure of the title, is incompatible with a purpose to let the property take its usual course, upon the event of marriage. The title, in the event of marriage, could not be in the trustee and the husband at one and the same time. Which, then, should yield, the marital right or the intention of the testator? Clearly the former; because in the construction of wills, the intention of the testator must be carried out, unless in violation of law. There is no law violated in the creation of an estate which defeats the marital right. The testator left it with the trustee to determine what kind of investment would most conduce to the comfort and interest of his daughter; that discretion is defeated, if the husband may sell the interest. Indeed, if he can do this, then the creation of the trust, and all the powers of the trustee, are nugatory. But it is said that the trust was fully executed when the daughter married—his powers being only such as appertain to a tes-

tamentary guardian. Such a limitation of his powers cannot be inferred from the will, and seems to be gratuitous. Why appoint a trustee at all? Why not leave the share of his daughters with the executors? Why not say that Mr. Fears is to be her guardian, *eo nomine*, if such was the intention of the testator? The case is one where extreme legal subtlety must be invoked, to arrive at a result manifestly repugnant to the intention of a testator. We will not labor, with far-fetched learning, to defeat a father's purpose in making provision, at death, for his child, when such purpose, if carried out, contravenes no law of the land. We are moreover clear that the daughter herself is restrained from alienating this property.

[4.] A married woman, unless restrained in the settlement, is a *feme sole*, as to her separate estate. *Wyly et al vs. Collins & Co.* 9 *Geo.* 223. If altogether restrained, she has no power of alienation ; and if partially restricted, she is a *feme sole, sub modo*, and must alien alone according to the restrictions. If, for example, she is forbid to dispose of her separate estate, without the consent of her trustee, a disposition without his consent, is invalid. *Weeks and Wife vs. Sego and another*, 9 *Geo.* 199.

If there is a prohibition against alienation, it is a part of the separate estate, and must stand or fall with it. And it is no objection to the validity of the restriction, that the woman is unmarried at the time of the creation of the trust. 1 *Beav.* 1. 4 *M. and Cr.* 290. 1 *Beav.* 34. 4 *M. and Cr.* 390. 4 *M. and Cr.* 377.

[5.] It has been held that nothing short of an express negative declaration, will suffice to deprive a *feme covert* of her right of disposing of her separate estate. This rule seems to be too stringent. Wills in reference to this very point, are more literally construed than deeds. If the intention to restrain the power of alienation, be clearly collected from the several clauses of a will, they will all be construed together, and effect will be given to the intention. *Baggett vs. Moore*, 1 *Coll.* 138. There is no reason why the intention of a testator to restrain alienation, should not be collected, just as intention is

ascertained in regard to any thing else ; nor is there any reason why intention to restrain, should not be enforced as well as any other intention. In this will, there is no express prohibition against alienation, but it is plainly the intention of the testator, derived from the several clauses in relation to this estate, to restrain his daughter from disposing of it.

The reasons already stated to prove this to be a separate estate, demonstrate a purpose to prohibit its alienation by the daughter.    The great reason is this, to wit: the power of alienation is expressly given  to the trustee; he is authorized to invest the fund derived from the estate, to buy and sell, and such a power is wholly incompatible with the same power in the woman.    He is directed *to take* the  titles of the investment in himself—if he must take, he must hold them ; and this authority is inconsistent with a power to sell  in  the woman.    Direction to manage the fund, by investing it according to his judgment, and to take  the titles of the property bought as trustee, negatives the idea that the  testator left the power to dispose of it, in his daughter.

The demurrer, we think, therefore, ought to have been sustained, and we reverse the judgment of the Court below.