## CHAPPELL vs. BOYD.

1. When the wife sues her husband's creditor in an action of complaint for money had and received by the creditor for the wife's use, the fact being that the money was paid by the husband to the creditor on a debt of the husband, the creditor knowing that it was the wife's money, the husband need not be made a party defendant—certainly not, unless there is a plea in abatement for non-joinder.

2. It is not a lawful investment of the wife's money by the husband, for the latter to buy land, give his two notes for the purchase money, take a bond for titles to himself, and when the first note becomes due, pay it off with money belonging to the wife, giving the creditor notice that it is his wife's money, and leaving the other note unpaid, and the legal title in the vendor, he (the husband) retaining the bond for titles, with no transfer of the same to his wife, or to any person for her use.

3. Where the husband paid the wife's money on his own debt for land, and then conveyed the land to her, leaving half of the purchase money unpaid, he having only a bond for titles, she is not estopped by accepting the deed from suing the vendor for her money, the conveyance from her husband to her never having been allowed or approved by a court of competent jurisdiction.

4. A claim to the land, interposed by the wife in resistance to a levy made upon it as the husband's property for a balance of the purchase money, and a verdict and judgment in the claim case declaring the property subject, will not, upon the doctrine of *res adjudicata* or former recovery, bar an action against the creditor in her favor for money of hers which the creditor received from her husband in discharge of a note given by the husband for a part of the purchase money, the creditor knowing that the money which he received was hers.

5. The wife having no power to consent to the application of her money to her husband's debts, has no power to ratify such application, even on compensation being made to her by her husband in property, without the allowance or approval of a court of chancery, or of the superior court of the county of her domicil.

6. Until such allowance or approval is had, the property conveyed as compensation is not the property of the wife absolutely, and unless she actually derived an income from the same, or had the use thereof to the exclusion of her husband, she is not chargeable with rents or profits. Such title as vests in her is provisional and dependent upon future allowance or ratification by the court having competent jurisdiction.

7. If the creditor of the husband to whom the wife's money has been paid has any claim upon the wife for rents or profits of the property conveyed by the husband to the wife as compensation, it is only by way of subrogation to the husband's rights, and in order for the creditor to recover such rents or profits, whether by action or by plea in the nature of cross action, the husband must be a party, and the evidence must be such as would establish a liabilty, either at law or in equity, in favor of the husband against the wife.

8. Evidence sufficient to warrant the verdict.

Husband and wife. Parties. Estoppel. Judgments. Principal and agent. Ratification. Before Judge WRIGHT. Webster Superior Court. March Adjourned Term, 1878.

Sarah J. Boyd brought complaint against Alexander Chappell for $600 00, alleged to have been paid him out of her funds by her husband, Uriah Boyd, in settlement of an individual debt of the latter. She charged that the defendant, at the time he received the money, knew that it was the property of plaintiff. The defendant pleaded the general issue, former recovery, payment, settlement, and estoppel.

Upon the trial of the issue thus formed, there was evidence to show the following facts:

In August, 1872, Uriah Boyd purchased from defendant a lot of land for $1,200.00, giving his two notes therefor, each for $600.00, and due respectively on November 15, 1872, and November 15, 1873, taking bond for title. He paid the first note with his wife's money, and the defendant

knew, or had good reason to know, where the money came from which he received. In November, 1873, Boyd, to protect his wife, (whose money he had taken for the purpose aforesaid, without her knowledge or consent,) conveyed to her the land purchased by him. Defendant commenced suit on the second note, and on September 15, 1874, recovered a judgment. He filed a deed in terms of the statute, and had a levy made. Plaintiff claimed, and in connection with her claim, filed an equitable plea, setting up the above stated facts, offering to return the land on the payment to her of the $600.00, praying a cancellation of the trade, a decree for her money, and general relief. The property was found subject.

To recover her money, with interest, Mrs. Boyd then commenced this suit. The jury found in her favor. The defendant moved for a new trial upon the following grounds:

1. Because the court excluded testimony to the effect that the land sold by defendant to Boyd, during the years 1874, 1875 and 1876, was worth $150.00 per annum rent, it having been shown that plaintiff was then in possession of the same under deed from her husband, claiming it as her own.

2. Because the court refused to charge the jury as follows: "If Boyd took his wife's money and paid it to Chappell on a debt he owed Chappell, and Chappell knew that it was his wife's money, then I charge you that Chappell is liable to Mrs. Boyd for the money, but she cannot recover it by merely suing Chappell alone, she must sue Boyd also; as she has not sued Boyd, I charge you that she cannot recover against Chappell in this case."

3. Because the court erred in its charge in this: Under the evidence for either party, it clearly appeared that the note which Boyd paid to Chappel, was not such a debt of the husband as was contemplated by the law which the court gave in charge, because said note was a part of an executory contract for the purchase of land, and if Boyd paid

said note with his wife's money, and Chappell knew it to be his wife's at the time, the plaintiff could not recover the same from the defendant, but could only look to the land in which her money was invested for reimbursement.

4. Because the verdict is contrary to law, and contrary to the charge of the court on the subjects of notice, ratification and settlement.

5. Because the verdict is without evidence to support it, contrary to equity, etc.

The court instructed the jury, amongst other things, that it was necessary for the plaintiff to show that the defendant knew the money in controversy was her property at the time he received it; that if they did not believe this fact had been established, no recovery could be had, and they need not consider the case further. If they believed this fact had been established, they would consider whether the plaintiff had ratified or confirmed the investment. If they believed she accepted the land from her husband in settlement of the money taken by her husband, that would be a satisfaction of her claim; but if they believed she received it from him simply to secure herself in the collection of her money, or to aid her in getting it, that would not of itself be sufficient—would not necessarily be convincing that she did take it in full satisfaction of the debt. That they might consider the legal steps the plaintiff took to claim the land, and ascertain what she meant by it. If they believed that the husband did take her money and pay this debt for the land which he had purchased, whether taken at the time of the purchase, or afterwards, to pay a note then given, and the defendant knew it was her money when he received it, the plaintiff would be entitled to recover unless she consented to or ratified the investment, or extinguished the debt.

The motion was overruled, and the defendant excepted.

W. A. HAWKINS; GUERRY & SON, for plaintiff in error.

JOHN R. WORRILL; SIMMONS & SIMMONS, for defendant.

BLECKLEY, Justice.

1. There was no plea in abatement for non-joinder of the husband as a co-defendant.   But if there had been, we do not see why it should have been sustained.   If two persons co-operate in the wrongful appropriation, that is, in the conversion of the money of a third, no doubt it may be reclaimed in a joint action against them both; but a several action against either seems equally maintainable, especially if the use which they made of the money was a several use as between themselves, the one paying and the other receiving it upon a debt owing by the former to the latter.   At all events, any proper objection as to non-joinder came too late, and not in the right manner.   Chit. Pl., 46; 54 *Ga.*, 541.

2. Can Mr. Chappell be allowed to treat the payment of Boyd's note with Mrs. Boyd's money, as a lawful investment of that money for Mrs. Boyd's benefit?   The law will not permit the wife herself to pay her husband's debt out of her separate estate.   Here the debt was not purchased as an investment, but paid, and the debtor paid it with his wife's money.   Going back to the original transaction, can the money be regarded as invested for Mrs. Boyd in the purchase of the land?   If so, why did Mr. Chappell make the bond for titles, not to her but to her husband?   Certainly, the original contract, as evidenced by the bond for titles, was that Chappell would convey the land to Boyd.   So far as appears, it was never stipulated or intended that he should convey it to Mrs. Boyd.   Not only was the bond for titles made to Boyd, but there was no understanding that he should transfer it to her, or to any person for her use.   The result of the transaction between Chappell and Boyd, as it stood down to the time when Mrs. Boyd's money passed between them, and as it continued to stand, was that Boyd was to be invested with title on full payment of the purchase money.   Surely, that was not a lawful mode of investing Mrs. Boyd's money, since it would result in transferring the fruits of it to her husband.

3. The idea of investment being out of the case, the next question is as to estoppel.  Boyd having paid his first note with his wife's money, leaving the other unpaid, and having no title from Chappell, but only a bond for titles, conveyed the land to his wife.  Her acceptance of that conveyance is urged as an estoppel upon her against recovering from Chappell the money paid on Boyd's note, one of the notes given by Boyd to Chappell for the purchase money.  The question then is this: a husband uses his wife's money under circumstances which hinder any title to it from passing out of her; he then conveys to her the property which the money paid for in part, but to which he had no complete title, and could have none without first making another payment; the paramount title to this property is in the very person who received the wife's money and who is liable to her for it: can this person retain that paramout title as security for the husband's debt owing to him for the balance of the purchase money, and still treat the wife as estopped by reason of her having accepted the subordinate or incumbered title from her husband?  Viewing the transaction as a sale from the husband to the wife, by which he put his property in place of her money, it was in the face of that provision of the Code (§§1785, 2337) which declares that "no contract of sale of a wife as to her separate estate with her husband or her trustee shall be valid, unless the same is allowed by order of the superior court of the county of her domicil."  Viewing it as an appropriation of Chappell's property to satisfy a liability which Chappell had incurred to refund to the wife her money previously received by Chappell in payment of the husband's debt, the appropriation was not made by Chappell, nor with his authority or consent, nor did he ever ratify it.  On the contrary, he stood upon his title paramount, or upon his lien dependent thereon under the law, and instead of allowing the wife to retain the land in the place of her money which had been applied to pay for it in part, insisted upon his right to enforce his title or lien for the purpose of realizing out of the

land the other note given by the husband for the remainder of the purchase money. To treat the property as the wife's land to estop her, and also to treat it as assets out of which to collect the husband's debt on the other note, cannot be made consistent; for to do this would expose the wife to the risk of losing her money and the land too—to the risk of losing her money because she has the land, and to the risk of losing the land because it is paid for only in part, and is therefore subject for the balance of the purchase money. This balance might, and probably would absorb the whole land to discharge it.

4. The doctrine of *res adjudicata*, or former recovery, is next to be considered. Chappell, after obtaining judgment against Boyd on the second note given for the purchase money, conveyed by deed to Boyd, and had the deed recorded, and then levied the judgment upon the land, pursuing the remedy pointed out in §3654 of the Code. Mrs. Boyd, standing then on the above mentioned conveyance to her from her husband, interposed a claim. The claim was tried, and the result was that the land was found subject to the judgment. This adjudication is now urged by Chappell as a bar to the present action. Would it not be strange if a judgment rendered at the instance of Chappell which takes the land away from Mrs. Boyd, should be held an insuperable obstacle to a recovery by her of something in lieu of the land? If she had not lost the land, most probably she would have been satisfied, and would not have sued for the money. But as the judgment in the claim case condemned the land to be sold away from her to pay a debt of her husband, the land was in Chappell's power; and when she thought proper to do so, she ceased to look to it, and turned her attention towards the money, as she might have done at first, had she been disposed. It seems she made a fight on the claim to save the land, but failing in that, she had recourse to her original right to reclaim her money which had gone to Chappell in part payment for it.

5. The doctrine of ratification is next presented as a de-

fense to the action.   It is said the wife, after learning that her money had been applied to her husband's debt, ratified it ; and not only so, but that she was compensated by the husband by a conveyance of the land.   But she had no power to ratify ; for had she voluntarily paid with her money her husband's debt she would not have been bound, and could have recovered the money back.   54 *Ga.*, 543.   What she could not have done in person, she could neither authorize her husband to do for her, nor ratify when done.   As to the compensation, much is applicable under this head which was said above under the last preceding head.   The provision of the Code cited, which requires an order of the superior court to render valid a sale between husband and wife, applies here with full force.   Doubtless, the allowance or approval of the court of chancery would serve the same purpose, but this case is not one in which the action of either court was invoked.

6. The final stand made in the argument in behalf of Chappell, was upon Mrs. Boyd's accountability for rent whilst she held the title, such as it was, under Boyd.   It is said that she ought to account to Chappell for the rents and profits of the land which accrued during that period, and that the value of those rents and profits ought to be deducted from the principal and interest (certainly from the interest) of Chappell's debt to her now sued for.   But any title she took from her husband was provisional, and dependent upon the future allowance or ratification by the court having competent jurisdiction.   It does not appear that she actually derived any income from the land, or had any use of the premises to the exclusion of her husband.   It does not appear that her husband withdrew from the possession and gave it up to her, so that the profit of the land actually went into her separate estate.

7. But suppose Mrs. Boyd ought to pay rent, to whom ought she to pay it, on letting go her imperfect title and leaving the land to take its fate ?   If she held the land and took the profits she did so under her husband, and not

under Chappell. She is in no direct privity with Chappell in respect to the possession. Chappell had not re-rented it after the contract to sell to her husband. He has a judgment against her husband for a part of the purchase money, principal and interest, and after paying this debt (the one now sued for) to her, may get a judgment against him for the balance. Chappell still holds her husband as a debtor, and possibly the latter may sometime pay the whole debt. In that event, if he gets rent from Mrs. Boyd, Chappell will have received both rent and interest for a part of the time. It seems pretty clear that Mrs. Boyd's accountability for rent, if she is accountable at all, is primarily to Boyd, and that if Chappell has any claim upon her, it is only by way of subrogation to Boyd's rights. Boyd is, therefore, interested, and would have to be a party before the court when the accounting took place. Moreover, the evidence, even then, would have to be such as would establish a liability in Boyd's favor against her; and such is not the character of the evidence in this record. Upon the whole, we think the rents and profits are not collectable, for any period of time whatever, out of Mrs. Boyd, on the pleadings and facts in the record before us.

8. As to the sufficiency of the evidence to warrant the verdict, we need not remark further than to say that according to the case made by the plaintiff below, the evidence was ample; but, according to that made by the defendant, it was not. Conflict, especially as to the important fact whether the title of Mrs. Boyd to the money was known to Chappell when he received it, is conspicuous. The jury believed he had notice, or the finding could not have been what it was. Let the verdict stand. There was no error in overruling the motion for a new trial.

Judgment affirmed.