## WEBB *v.* HARRIS, administrator.

A transfer by a married woman to her husband of a bond for titles, upon the consideration that he carry out her obligation as to the payment of the debt therein referred to, is a sale by the married woman of her separate property, and is invalid in the absence of an order of the superior court of her domicile, allowing the same. The payment by the husband of the debt referred to in the bond for titles under such circumstances

is a mere voluntary payment, and will not entitle him to be subrogated to the rights of the creditor.

Argued December 1, 1905.—Decided January 13, 1906.

Equitable petition. Before Judge Holden. Elbert superior court. March term, 1905.

A. G. Webb brought an equitable petition against Mrs. Gairdner, administratrix of H. R. Gairdner, and C. P. Harris, administrator of Mrs. M. M. Webb, and alleged: Petitioner's wife, the intestate of the defendant, borrowed from Mrs. Bowman a certain sum of money, and gave her note for it, and, to secure the payment of the note, made a conveyance to Mrs. Bowman of certain property in Elberton, taking from Mrs. Bowman a bond for title to the property. Mrs. Bowman died, and Tate qualified as her executor. Mrs. Webb's note became due, and she, being unable to pay it, assigned her bond for title to petitioner, who paid the note. The assignment was without any other consideration than that petitioner should pay the note. At the time of this payment the bond for title was lost, and the executor of Mrs. Bowman refused to make a deed to petitioner, but canceled upon the record the deed from Mrs. Webb to Mrs. Bowman, thus leaving title to the property in Mrs. Webb. Later the bond for title was found, but Tate had been discharged as executor, and could not make a deed to petitioner. After this transaction, Mrs. Webb borrowed a certain sum of money from Mrs. Gairdner, administratrix, and made her a deed to the above property to secure the debt, taking a bond for title from her. When this note became due, Mrs. Webb was unable to pay it, and assigned this bond for title to petitioner. Mrs. Webb has died, and her estate is insolvent. Petitioner tenders the amount of the debt and interest due Mrs. Gairdner, administratrix, and prays: (1) that, upon the payment of the Gairdner note, Mrs. Gairdner, administratrix, be directed to make him a quitclaim deed to the premises; (2) that C. P. Harris, administrator of Mrs. Webb, be directed to reimburse petitioner the amount advanced by him to Mrs. Webb on the bond for titles, with interest, and that his judgment be a special lien against the property, superior to all other liens or debts against the estate, except as provided by law. When the case was called for trial, it was agreed between the parties that Mrs. Gairdner, administratrix, had, since the filing of the petition, accepted the petitioner's tender, and had made him a

'quitclaim deed to the property as prayed, and that the suit should proceed only against C. P. Harris, administrator of Mrs. Webb. By an amendment to the petition it was alleged, that Tate, executor of Mrs. Bowman, instituted suit on the note of Mrs. Webb, that several payments on the note were made by petitioner before judgment, and that a judgment was rendered against Mrs. Webb for the balance due, which was paid by petitioner.

At the trial evidence was introduced tending to support the allegations of the petition; and all the evidence offered was ruled out, and the petition dismissed. To these rulings the plaintiff excepted.

*George C. Grogan,* for plaintiff.

COBB, P. J. (After stating the foregoing facts.)   Prior to 1866 whether the wife's property was her separate estate depended upon marriage contracts and settlements. Whenever there was a separate estate created for her, the law treated her as a feme sole as to the property so embraced, but the settlor had a right to restrict her power over the property composing her separate estate. Ordinarily she was allowed to contract with reference to her separate estate, but there were certain contracts which she was not permitted to make. She could make no contract of suretyship, nor could she assume the payment of the debts of her husband. A sale of her separate estate for the purpose of paying her husband's debts was absolutely void, and no contract of sale as to her separate estate with her husband or trustee was valid unless the same was allowed by an order of the judge of the superior court of the county of her domicile. Code of 1863, §§ 1732-1735.   Under the married woman's act of 1866, which is now a part of the constitution of the State, the separate estate of the wife depends, not upon marriage contracts and settlements, but upon whether title to the property has passed into her. If she owned the property at the time of her marriage, no change in the title is effected by the marriage. If she derives title during coverture, the title remains in her. So far as her property is concerned, no matter from what source derived, she is the owner, and the husband has no interest therein as a result of the marriage. The law has simply created a separate estate for the wife out of all her property of every character whatever, instead of leaving the volume of her separate estate to be determined by contracts and settlements. She is a feme sole as to all her separate estate, and may contract in reference to the same,

subject only to the same restrictions which were placed upon her prior to the passage of the married woman's act. These provisions were for her protection, when the existence of her separate estate was largely dependent upon the conduct of others, and therefore her estate might be large or small as they might determine, and are still maintained for her protection when her separate estate embraces all of that which she owns. As was said by Judge Bleckley in *Humphrey* v. *Copeland*, 54 *Ga.* 546: "These restrictions upon the wife's power, imposed for her own benefit and protection, are perfectly consistent with the act of 1866 and the new constitution, which simply secure to the wife all her property and make it her separate estate. She is as much exposed to 'the kicks and kisses,' especially to the kisses, of her husband, with all as with only a part. If the husband and his creditors are allowed to prey upon her estate at all, it is not likely that they will be the less eager to digest it because it happens to be large. On the contrary, that would render it only the more tempting."

Therefore a sale by a wife in payment of her husband's debts is "absolutely void." Civil Code, §2488. And a contract of sale by the wife to the husband is valid only when allowed by an order of the superior court of the county of her domicile. Civil Code, §2490. Prior to 1866 a deed to a married woman was ineffectual to pass title into her; but where such a deed was made either by the husband or by a third party, and the evident intent of the parties was that the property should be the separate estate of the wife, although the title never passed into the wife, or, if passing into her, immediately passed to the husband, he was deemed in equity, although the holder of the legal title, the trustee for the wife. *Phelps* v. *Brooks,* 12 *Ga.* 195; *Johnson* v. *Hines,* 31 *Ga.* 720, 728; *McQueen* v. *Fletcher,* 77 *Ga.* 444; *Follendore* v. *Follendore,* 110 *Ga.* 359, 362. In *Booker* v. *Worrill,* 55 *Ga.* 332, it was held that a husband, since the passage of the married woman's act of 1866, could make a deed directly to his wife, and if a husband was indebted to his wife for rents of her separate estate, that such an indebtedness would be a valuable consideration to support a deed from him to her. No question was raised as to the necessity of an order of the superior court to make valid such a transaction. When the same case came before this court a second time (57 *Ga.* 235), the deed from the husband to the wife was treated as if it

were valid, still no question being raised as to the necessity of an order of the superior court rendering the transaction valid. In *Humphrey* v. *Copeland,* 54 *Ga.* 545, Judge Bleckley, after referring to these provisions of the code, one of which makes void the sale of the wife's separate estate to the husband's creditors in extinguishment of the debt, and the other which declares invalid any sale by her to her husband made without the sanction of the judge of the superior court, says: "Money is clearly within the reason and spirit of these restrictions upon the wife's power. Although the word *sale* does not, in the letter, comprehend a transaction in which money alone passes, yet the transaction itself, with respect to its effect on the wife's fortune, would be the same; and that is the thing to be regarded. . . Payment by the wife of the husband's debt, whether made in money or other effects belonging to her, is void if the creditor have notice of her title. He acquires nothing and she loses nothing. And the same rule applies where, with like notice to the creditor, the payment is made by the husband with her money, whether she consents to it or not. Under such circumstances, her consent passes for nothing."

In *Chappell* v. *Boyd,* 61 *Ga.* 662, it appeared that the husband paid the wife's money on his own debt for land, and then conveyed the land to her, leaving one half of the purchase-money unpaid, he having only a bond for titles. It was held that the wife was not estopped, by accepting the deed, from suing the vendor for her money, the conveyance from her husband to her never having been allowed or approved by a court of competent jurisdiction. It was also held that the wife had no power to consent to the application of her money to her husband's debts, nor to ratify such application, even for value, unless the ratification was approved by a court of competent jurisdiction. On the inability of a wife to ratify the appropriation of her money to her husband's debts, see also *Windsor* v. *Bell,* 61 *Ga.* 671; *Klink* v. *Boland,* 72 *Ga.* 493; *Smith* v. *Head,* 75 *Ga.* 755. In *Hood* v. *Perry,* 75 *Ga.* 310, it was held that a sale made by a married woman to her husband, when the same was not allowed by an order of the superior court of the county of her domicile, was not only voidable but void. See also *Fulgham* v. *Pate,* 77 *Ga.* 454; *Flannery* v. *Coleman,* 112 *Ga.* 648. In numerous cases a sale by a husband to a wife, when there was no order of court allowing the sale, has been treated as valid.

The consideration in some of these cases has been a debt due by the husband to the wife, as it was in *Booker* v. *Worrill,* supra. In others the consideration does not appear. As illustrations of this class of cases, see *Vizard* v. *Moody,* 119 *Ga.* 921, and cit. In *Moore* v. *Carey,* 116 *Ga.* 28, it was said that a wife may be a bona fide purchaser without notice from her husband, and no reference is made to the necessity of an order from the judge of the superior court. In *Simmons* v. *Bush,* 61 *Ga.* 170, a transaction which in effect amounted to a sale of a promissory note, the property of the wife, to the husband, was held to be invalid for the reason that there was no order of court allowing the sale. In *Butts* v. *Trice,* 69 *Ga.* 74, it was held that an agreement by a wife to accept certain land from her husband in lieu of dower is in effect a sale by the wife to the husband; and some doubt was expressed as to whether a transaction of this character could be made valid even by an order of the superior court. In *Comer* v. *Allen,* 72 *Ga.* 1, a mortgage made by a husband to secure a debt due to the wife was held to be valid, and was allowed to take precedence over subsequently acquired liens of other creditors; and this, too, notwithstanding the fact that the debt was barred by the statute of limitations at the time the mortgage was given, and the husband was in failing circumstances; these facts not having the effect to render the transaction fraudulent, but being merely circumstances to be considered in passing upon the fairness of the transaction. In *Palmer* v. *Smith,* 88 *Ga.* 84, it was held that though a conveyance of land by a married woman in payment of her husband's debts was declared by the statute to be absolutely void, it was only so as against her, and upon her election to treat it as void, coverture being a personal privilege which is not available in behalf of a stranger to her title.

The foregoing citations do not by any means embrace all the decisions of this court involving directly or indirectly the meaning of the words "absolutely void" in the statute, declaring that any sale of her separate estate to a creditor in payment of her husband's debt shall be absolutely void, and the word "valid" in the provision of law which declares that no contract of sale of the wife as to her separate estate with her husband or trustee shall be valid unless allowed by an order of the superior court of her domicile. A sufficient number of the decisions, however, have been cited to indicate that there is an apparent, if not a real, conflict in the

rulings in reference to the provisions of law above referred to. There are a number of other decisions which follow either one or the other of the lines of decisions above cited. Is the conflict between the decisions real or only apparent? Can they be reconciled upon any underlying principle?

If the case of Booker v. Worrill, supra, and the cases which follow it, be restricted to the exact questions which were before the court, they simply establish that since the married woman's act of 1866 a deed from a husband to a wife passes the legal title into the wife, and that the intervention of a trustee is no longer necessary for this purpose. The legal title passes immediately. Whether the transaction be complete, and the legal title shall remain in the wife or be revested in the husband, depends upon whether the transaction between the husband and wife is thereafter confirmed by a proper order of the superior court. The title passes, but the transaction is in an inchoate condition until the judge approves the same. That is, the wife becomes the owner of the property, but her ownership is provisional only. If the judge of the superior court refuses to approve the sale, then the conveyance is set aside and the title revests in the husband. In Chappell v. Boyd, supra, it was held that where a deed was made by the husband to the wife, she was not the absolute owner of the property until the transaction was approved by the proper court. "Such title as vested in her is provisional, and dependent upon future allowance and ratification by the court having competent jurisdiction." As between the husband and the wife, the title of the wife is provisional only, and the transaction is subject to repudiation at her instance upon application to a court of competent jurisdiction. But until the transaction is set aside and the provisional title in the wife is taken away and revested in the husband, the wife is the owner of the property so far as the husband and those claiming under him are concerned. She may apply to the superior court at any time for an order approving the transaction, or for an order setting it aside. But this is a personal privilege not available in behalf of a stranger to her title. It may be exercised by her; but as to those who are strangers, the provisional transaction between the husband and wife stands as the completed transaction until set aside by an order of a court of competent jurisdiction upon application by a proper person. For this reason, where a wife holds title by virtue of a conveyance

of her husband, although never allowed by an order of court, she may interpose a claim upon property levied upon, and may take any other steps the law authorizes an owner of property to take to protect it in the hands of the owner. Simply because her title is provisional it is no less a title, and this would not justify third persons in depredating upon it, and she may protect her provisional title in the same way that any one is allowed to protect property to which they hold absolute title. It is to be kept in mind that when husband and wife deal with each other in reference to the separate estate of the wife, one party, the husband, has full capacity to contract, and the capacity of the other party, the wife, is restricted. A distinction between transactions where the husband conveys to the wife, and where the wife conveys to the husband, grows out of this fact. If the husband conveys his property to his wife, he can not afterwards have the conveyance set aside, except under circumstances where any person would be allowed to rescind the transaction. As long as the wife or some one claiming under her, having a right to raise an objection to the transaction, does not move, the matter stands so far as the husband is concerned. On the other hand, if the wife conveys to the husband, she has the right to elect either to apply to the superior court for an order making absolute her title, which is only provisional, or she may repudiate the transaction altogether. If she desires the title to be made complete, an order of the superior court is essential. If she desires to repudiate the transaction, nothing is needed except an act of repudiation on her part. Until the sale is approved by the superior court, the husband deals with the property as his own at his risk and pays out money at his peril. The facts of the case of *Flannery* v. *Coleman,* supra, furnish an illustration of the application of this rule in regard to such transactions. In that case there was a conveyance by the husband to the wife, and also a conveyance by the wife to the husband. The conveyance by the husband to the wife had never been approved by an order from the superior court, but the wife was allowed to maintain the position of an owner of the property, and stand upon the title which the husband had given her, while she was allowed to repudiate a subsequent conveyance from her to the husband of the same property upon the ground that it had never been approved by an order of the judge of the superior court. That was a claim case. The wife was the claimant. Her

title depended upon a deed from her husband. The plaintiff in execution depended upon a subsequent deed from the wife to the husband. The wife was allowed to repudiate the latter deed, and her claim was sustained by the title obtained by the first deed, which was a deed from the husband in a transaction which had never been approved by any court.

If the transaction between the husband and the wife in the present case was a sale, then the case is to be determined by the application of the principles above referred to. If it was a gift, of course the husband would obtain a good title to the property of the wife involved in the transaction. Civil Code, §2490; *Cain* v. *Ligon,* 71 *Ga.* 692. But the transaction was a sale. The assignment of the bond for title was in the following language: "For $1,100.00, the same being for value received, I hereby transfer the within bond for titles in fee simple to my husband, A. G. Webb, he to fulfill my obligation in the within bond. This first day of November, 1896." If this assignment is looked to alone, it is clear that the transaction was a sale. It is not only stated to be for value received, but the consideration received is set forth in dollars and cents. The petition avers that there was no other consideration than the agreement of the plaintiff to carry out the obligation of his wife as to the payment of the money evidenced by the note. It is sufficient to say that there was no evidence to support this allegation. But even if the allegation be taken as true, the husband agreed to pay the note of Mrs. Bowman, which was a liability on the wife binding her separate estate. The consideration of the transaction thus moving to the wife was valuable. That is, when the contract of the husband was performed, she would be relieved from a liability which she had undertaken and which was binding upon her. Mrs. Webb's interest in the land represented by the bond for titles was her separate estate. No sale to her husband of her interest in the land represented by the bond for titles would be valid without an order of the superior court allowing the sale. The title of the husband and his right to use the property and deal with it as his own was, so far as he was concerned, dependent upon an order of the superior court approving the transaction. If the husband upon the faith of this assignment had paid the debt to Mrs. Bowman or her legal representative, and surrendered the bond for titles and obtained a conveyance to himself, and the wife had been

compelled to go into equity to cancel this conveyance, it might be that a court of equity would compel her to do equity, that is to repay to the husband the balance of the purchase-money which he had paid. But this was not done. The husband attempted to do this, but on account of the loss of the bond for titles the executor of Mrs. Bowman refused to make him a deed. Instead of establishing a copy of the bond for titles and insisting upon the conveyance to him by the executor, he permitted, even if he did not request, the executor to cancel the security deed upon the record. And when this was done, by force of the statute applicable in such cases the title to the property immediately vested in his wife. Civil Code, §2774. He was not required to do this. This was his voluntary act. The question now is, whether a court of equity will, at the instance of the husband after the death of the wife, make valid the transaction between the husband and the wife, made during the lifetime of the latter, which the husband knew was invalid, and which the husband by his own act has practically set aside. The legal representative of the wife's estate simply stands upon the legal title which was in his intestate at the time of her death. The legal representative of the wife might have had a right to repudiate the transaction, but no act of repudiation on his part was necessary. The transaction was at an end by the conduct of the husband. The legal title was again in the wife, and there for the reason that the husband had seen fit to give the matter a direction which brought about that result. The transaction not having been approved by an order of the superior court at the time that the husband paid the amount due Mrs. Bowman, he paid at his peril. He could have taken an assignment of her claim against his wife, to be used in the event either the wife repudiated the transaction, or the superior court upon application refused to confirm the sale. If he had taken a transfer of the note at the time of the payments on the note, or if he had taken a transfer of the judgment at the time he paid the judgment, of course his status would have been entirely different. But he paid the note and he paid the judgment, each of which was cancelled by the payment, at a time when he was under no legal or moral obligation to pay either. In a transaction like this, where the husband deals with the wife in reference to her separate estate, the husband should promptly apply to the superior court of the county of the wife's domicile for an order confirming

the transaction, and should not deal with the property as his own, nor pay out money on the faith of the transaction until the same has been confirmed by the court. In every transaction between husband and wife, which amounts to a sale, there is involved a sale of the separate estate of the wife. If land of the husband be conveyed to the wife for a consideration, the consideration, whatever it be, money, property, or a chose in action, is the separate estate of the wife. Hence it follows that in every case of sale between husband and wife, there must, in order to render the transaction valid and complete as between them, be an order of the superior court approving the transaction, at least so far as the wife's property involved is concerned. The payments on the note and judgment by the husband in the present case were voluntary payments. It was not claimed that the evidence made out a case of conventional subrogation. We do not think that under all the circumstances a case of legal subrogation has been established. In this connection, see *Wilkins* v. *Gibson*, 113 *Ga.* 31.

> *Judgment affirmed. All the Justices concur.*