24359.   THOMPSON *v.* WRIGHT, administrator.

Decided September 27, 1935.

*R. Lee Moore, H. B. Strange,* for plaintiff.
*Hinton Booth,* for defendant.

Stephens, J.   Mrs. Thompson brought suit against Wright as administrator of the estate of Mrs. Cora Hendrix, deceased, to recover upon a note which had been executed by decedent to T. P. Hendrix. The note matured January 1, 1926, and was transferred

after maturity to the plaintiff. There was an entry on it that it was for purchase-money for land designated. A defense interposed by the administrator was that the note, if made by his intestate, was void in that it was executed by her to her husband as a promise to pay the purchase-price of land sold by him to her, and that its execution had not been allowed by order of the superior court of the county of her domicile. A demurrer by the plaintiff to the plea was overruled. The case proceeded to trial and resulted in a verdict and judgment for the defendant. To the judgment overruling the demurrer, and to the judgment overruling the plaintiff's motion for a new trial, the plaintiff excepted. Upon the trial the facts set out above as appeared from the petition and the defendant's plea were established by undisputed evidence. A verdict for the defendant was directed. The plaintiff's motion for new trial was overruled, and she excepted. The question for determination is whether the administrator of a married woman, in a suit against him on a note by a transferee thereof after maturity and not in due course, which note was executed by the intestate to her husband for the purchase-money of land sold by the husband to the intestate, can plead the coverture of the wife, the note having been executed without the transaction having been allowed by order of the superior court.

The Code of 1933, § 53-504 (Code of 1910, § 3009) provides: "No contract of sale by a wife of her separate estate to her husband or her trustee shall be valid, unless the same shall be allowed by order of the superior court of the county of her domicile." (Note the somewhat different verbiage of section 3009 of the Code of 1910, which difference, however, is immaterial here.) This section voids a contract between a husband and a wife under which the wife sells her separate estate to her husband, in the absence of an approving order of the superior court. Does the term "separate estate" as here used cover money of the wife which she by a promissory note promised to pay to her husband? It has been held by the Supreme Court in construing section 53-503 of the Code of 1933 (Code of 1910, § 3007), which declares void any sale by a wife "of her separate estate" to a creditor of her husband in extinguishment of his debt, that money belonging to the wife and paid by her in extinguishment of her husband's debt was a sale of her separate estate. *Humphrey* v. *Copeland*, 54 *Ga.* 543.

It is there stated that "the Code, in declaring a sale void when made by the wife to a creditor of the husband in payment of his debt, comprehends, in its reason and spirit, a transaction in money, as well as a transaction in property." There is no difference in the meaning of the phrase "separate estate" as used in section 53-504 of the Code of 1933 (Code of 1910, § 3009) and its meaning as used in section 53-503 of the Code of 1933 (Code of 1910, § 3007). A note executed by the wife to the husband for the purchase-money of land sold by the husband to the wife is a contract by the wife to sell her separate estate to her husband, the separate estate being the amount of money belonging to the wife which she in the note contracts to pay. See *Webb* v. *Harris,* 124 *Ga.* 723, 733 (53 S. E. 247), where it is held that "a transfer by a married woman to her husband of a bond for titles, upon the consideration that he carry out her obligation as to the payment of the debt therein referred to, is a sale by the married woman of her separate property, and is invalid in the absence of an order of the superior court of her domicile, allowing the same." See *Chappell* v. *Boyd,* 61 *Ga.* 662 (3); *Booker* v. *Worrill,* 55 *Ga.* 332 (2). The object of this inhibition upon the wife's capacity to contract as provided in this code section is to protect the wife from being overreached and mulcted of her property by her husband. This can be prevented only by making invalid any contract by the wife to convey or sell any of her property, including money, to the husband, except on the condition prescribed in the code section. It is therefore clear that the note made by the wife to the husband for the purchase-money of land sold by the husband to the wife, is invalid where the transaction is not sanctioned by an order of the superior court.

■ It has been held in numerous decisions by the supreme court that a plea of coverture by the wife is personal and can not be made by a stranger to her title or persons who are not in privity with her in blood or estate. The wife's coverture can not be asserted by one who claims adversely to her, land conveyed to her by the husband. *Scaife* v. *Scaife,* 134 *Ga.* 1 (67 S. E. 408). It can not be asserted by a creditor of the husband who has levied upon the land. *Williams* v. *Rhodes,* 149 *Ga.* 170 (99 S. E. 531). Nor by the heirs of the husband in an action to recover the land from one holding under the wife. *Munroe* v. *Baldwin,* 145 *Ga.* 215 (3) (88

S. E. 947). Nor by the husband against the heirs of the wife. *McArthur* v. *Ryals*, 162 *Ga.* 413 (134 S. E. 76). Nor by the wife's creditor where the wife had conveyed the land to her husband. *Royster Guano Company* v. *Odum*, 167 *Ga.* 655 (146 S. E. 475). See also *Hawes* v. *Glover*, 126 *Ga.* 305 (55 S. E. 62); *Palmer* v. *Smith*, 88 *Ga.* 84 (13 S. E. 956); *Georgia Casualty Co.* v. *McRitchie*, 45 *Ga. App.* 697 (166 S. E. 49).

An heir stands in privity in blood to the ancestor. "A privy in blood derives his title by descent." 50 C. J. 408. Privity in estate is where one derives his title to property by purchase. 50 C. J. 407. While the plea of coverture of the wife can not be asserted by strangers to the title or by persons not in privity with her in blood or estate, it can be asserted by the personal representative of her estate as against contracts made by her. 24 C. J. 753. As is stated in *Morris* v. *Murphey*, 95 *Ga.* 307, 310 (22 S. E. 635, 51 Am. St. R. 81). "The administrator is in law the personal representative of the deceased. He is, for all practical purposes involving the administration of his affairs, a legal substitute for the deceased. . . No person other than he, for and on behalf of the estate, can in his own name as matter of right prosecute or defend a suit in which his estate is interested as plaintiff on the one hand or defendant on the other. The administrator with respect to such matters stands upon the same footing as the deceased." In Baker *v.* Garris, 108 N. C. 218 (13 S. E. 2), it was held that the executor of a married woman might plead the coverture of the testatrix. The plaintiff, who is the transferee of the note, not being a holder in due course, is subject to the defense of the wife's coverture. The defendant's plea set up a good defense, and the uncontradicted evidence demanded the verdict as directed. The court did not err in overruling the demurrer to the plea and the motion for new trial.

*Judgment affirmed. Sutton, J., concurs. Jenkins, P. J., dissents.*

JENKINS, P. J., dissenting. The ruling stated in paragraph 2 of the majority opinion I conceive to be a sound principle of law. It is with some degree of doubt that I feel compelled to dissent from the conclusion arrived at in paragraph 1. This case presents the clear-cut question as to whether our statutes prohibit a bona fide sale of property by a husband to the wife in the absence of

any authority from the superior court. The numerous decisions by our Supreme Court which might be taken to throw light upon the determination of this question may be resolved into three classes: First: Cases involving § 53-503 of the Code of 1933, which prohibits the assumption by the wife of the debts of her husband and any sale of her separate estate made to a creditor of her husband in extinguishment of his debts. See, for example, *Humphrey* v. *Copeland*, 54 *Ga.* 543, cited in the majority opinion. In that case, the *ruling* of the court was that a creditor receiving the money of his debtor's wife in satisfaction of the husband's debt, knowing it to be her separate estate, acquired no title to the fund so received as against the wife. Second: Cases involving § 53-504, which prohibits a sale *by the wife* of her separate estate *to her husband* or her trustee, unless the same shall be allowed by order of the superior court of the county of her domicile. See, for example, *Webb* v. *Harris*, 124 *Ga.* 723 (supra), also cited in the majority opinion. In that case it was held that the transfer by a married woman to her husband of a bond for title, upon the consideration that he carry out her obligation as to the payment of the debt therein referred to, was invalid as against the wife, in the absence of an order of the superior court of her domicile allowing the same. Third: Cases where the identical question here involved, that is, whether or not a conveyance of property *by a husband to the wife* requires authority from the superior court, was raised but held not necessary to be decided. See, in this connection, *Anderson* v. *Higginbotham*, 174 *Ga.* 565, 566 (2-*b*) (163 S. E. 477); *McArthur* v. *Ryals*, 162 *Ga.* 413 (134 S. E. 76); *Munroe* v. *Baldwin*, 145 *Ga.* 215 (3) (88 S. E. 947); *Scaife* v. *Scaife*, 134 *Ga.* 1 (67 S. E. 408). It appears, therefore, that the Supreme Court has repeatedly left the question now presented open.

While language was used in discussing the questions involved in the *Webb* and *Humphrey* cases, supra, which might seem to indicate that an order of the superior court is necessary to validate a conveyance made by a husband to the wife, neither of those cases involved the question here presented. The decision in the *Humphrey* case was dealing with the question whether a creditor of the husband could retain the wife's money, paid by the husband in extinguishment of his debt; and the *Webb* case was where the husband was seeking to acquire the wife's separate estate, and not, as

here, where the wife sought to acquire by purchase the property of her husband. In the *Webb* case Justice Cobb, speaking for the court, used the following language: "In numerous cases a sale by a husband to a wife, when there was no order of court allowing the sale, has been treated as valid. The consideration in some of these cases has been a debt due by the husband to the wife, as it was in *Booker* v. *Worrill* [55 *Ga.* 332]. In others the consideration does not appear. As illustrations of this class of cases, see *Vizard* v. *Moody,* 119 *Ga.* 921 [47 S. E. 348], and cit. In *Moore* v. *Carey,* 116 *Ga.* 28 [42 S. E. 258], it was said that a wife may be a bona fide purchaser without notice from her husband, and no reference is made to the necessity of an order from the judge of the superior court." Neither the *Webb* nor the *Humphrey* decision being an adjudication of the question here presented, it appears that the Supreme Court has never established a rule contrary to what Justice Cobb referred to, in "numerous cases" where "a sale by a husband to a wife, when there was no order of court allowing the sale, has been treated as valid;" but in many cases, continuing down as late as the *Anderson* case, 174 *Ga.* 565 (supra), has left the question an open one.

Prior to the passage of the married woman's act of 1866, in the absence of any restriction in a marriage contract or settlement creating a separate estate, the wife was a feme sole with reference thereto, subject only to the same restrictions as now exist. Accordingly, even before the passage of the act of 1866, the Supreme Court, as far back as *Fears* v. *Brooks,* 12 *Ga.* 195, *Johnson* v. *Hines,* 31 *Ga.* 720, 728, and *Crawford* v. *Brady,* 35 *Ga.* 184, 191, had adopted the rule that a conveyance *by a husband to the wife,* evidencing the creation of a separate estate in the wife, conveyed the equitable title to her, with the result that prior to the married woman's act the legal title was held by the husband as trustee for the wife. In *Booker* v. *Worrill,* 55 *Ga.* 332, 335, it was held, that, *since* the passage of the married woman's act, "a husband may make a deed in Georgia directly to his wife, and such deed is valid without the intervention of a trustee." See also *Follendore* v. *Follendore,* 110 *Ga.* 359, 362 (35 S. E. 676). Long after the passage of the married woman's act, the Supreme Court held, in *Moore* v. *Carey,* supra, that "a wife may be a bona fide purchaser without notice from her husband, where he is dealing with the

property as his own," and that "it follows that while a purchase by an administrator at his own sale is voidable at the election of heirs or creditors of the estate, a deed made by him conveying the property to his wife for a valuable consideration vests the title in her, if she had no knowledge of the manner in which he acquired his title." In the adjudicated cases the bone of contention with respect to conveyances by the husband to the wife has always been the question of fraud as against the creditors of the husband. In none of those decisions is there the slightest intimation of any requirement as to sanction by the superior court. A long list of decisions collated in *Anderson* v. *Higginbotham,* supra held, in effect, that where a wife buys land from the husband she may ordinarily agree with him to pay the purchase-price by the assumption and payment of an existing lien debt of the husband to a third person, without contravening Code § 53-503, prohibiting the assumption by the wife of the debts of the husband. In the instant case the majority opinion appears to be based largely upon language used in the *Humphrey* case (54 *Ga.* 543) and the *Webb* case (124 *Ga.* 723). The *Humphrey* case was an interpretation of § 53-503, and did not involve a sale of property either by the wife to the husband or by the husband to the wife. The argument in the majority opinion is, that, since the language "any sale of her separate estate" (in § 53-503), prohibiting the assumption by the wife of the husband's debts or any sale of her separate estate in extinguishment thereof, is the same as is used in prohibiting the sale of her separate estate by the wife to the husband unless approved by the superior court (in § 53-504), the reasoning in the *Humphrey* case should be taken to apply to the present situation arising, not under § 53-503, but under § 53-504. The question in the *Humphrey* case was not whether the husband could convey his property by a bona fide sale to his wife for a money consideration paid either directly to the husband or in effect to him indirectly by extinguishing his obligation to his lien creditor; but the question was only whether a creditor of the husband could lawfully receive the wife's money, knowing it to be hers, in payment of the husband's debt.

As already said, no conveyance by husband to wife or by wife to husband was involved. The express inhibition of § 53-503 against the wife's "*assumption* of the debts of her husband" includes with-

in its manifest intent, reason, and spirit, if not by its plain letter, an actual payment of money or transfer of property, as well as an executory agreement to pay money or transfer property. It certainly would have been an anomaly to hold that only the threat of the wrong was unlawful, but that an actual perpetration of the wrong by payment was lawful. The logic and effect of the rulings in the *Anderson* case (174 *Ga.* 565), and many of the cases there cited, that the inhibition of § 53-504 has "no application to an executory agreement of a wife to pay a debt of her husband, owed to a third person, as consideration expressed in a deed by the husband to the wife, conveying realty on which the debt was an outstanding incumbrance," and that "an executory agreement as described is not a sale, nor is it a separate estate of the wife," seem to require a decision of the instant question contrary to the ruling made by the majority of the court. If a husband can lawfully convey property to his wife upon the valuable consideration which necessarily accrues to him from the wife's paying or agreeing to pay the husband's debt to a lien creditor, why may not the husband with equal legality convey the property to her upon the same consideration by the wife's paying or agreeing to pay directly to the husband? Can there be any possible difference in legal effect? If the executory transaction was held in the *Anderson* case not to be a sale of the wife's money or separate estate, it would seem that the promise of payment of the same consideration payable directly to the husband would be no less lawful. In both situations, whether the wife pays or agrees to pay her own money to her husband's creditor to discharge the husband's debt, or pays or agrees to pay it directly to the husband, her money passes from her, and the husband obtains the benefit. Therefore I can see no real distinction between a husband selling property to his wife and taking her note for it, and selling his property to her and taking her obligation to pay off and discharge his lien indebtedness to his creditor. When the rule was established and at the time it was put into the statute that the husband could not purchase the separate estate of his wife without the approval of the superior court, it was not deemed expedient for her protection to prohibit her from acquiring his property. If the statute had so intended, it seems that it would necessarily have been so stated. In sales by the husband to the wife, it is not the wife, but the

husband's creditors, whom the law has seen fit to guard with a jealous eye. As I see it, the *Anderson* decision and the cases on which it was based conclusively upset the argument by analogy based in either the *Humphrey* case or the *Webb* case. In the *Webb* case it was held: "A transfer by a married woman to her husband of a bond for titles, upon the consideration that he carry out her obligation as to the payment of the debt therein referred to, is a sale by the married woman of her separate property, and is invalid in the absence of an order of the superior court of her domicile, allowing the same." The *Anderson* decision held precisely the contrary with reference to a sale *by the husband to the wife.* Therefore it necessarily follows that the provisions of § 53-504, prohibiting the unauthorized sale of the wife's separate estate to the husband, can not be enlarged by implication to prohibit a sale by the husband to the wife. The only possible theory on which the *Anderson* case and similar cases do not stand in direct conflict with the *Webb* case is that the limitation in § 53-504 pertains only to the acquisition of the wife's separate property by the husband, without any implied prohibition on the wife's acquiring by purchase the property of her husband.

The courts never have said, in a case where the question was involved, that the husband could not make a bona fide sale of property to his wife without the sanction of the superior court. It would seem that the trend of all the cases presents a barrier against any such new restriction at this late date. All the changes made by the constitution and statutes, as well as the tendency of the decisions, upon the status of married women move in the opposite direction, that is, toward an extension rather than a new restriction by implication of their contractual rights and freedom. The wife can be a business partner of the husband. She can give him money or property. She can lend him money upon a security deed, and can reconvey the property to him upon his payment of the debt. Why, then, in the absence of any restriction in the Code, should she be forbidden to freely purchase and acquire his property on her own responsibility?