## ELLIOTT *v.* KEITH.

102 117
112 358

1. One sued in his individual capacity for a wrongful conversion of personal property may justify by showing that the property alleged to have been wrongfully converted by him was rightfully held as the property of a lunatic for whom, subsequent to the conversion, he had been appointed guardian; but upon the trial of such a case, the plaintiff is a competent witness on her own behalf even as to communications and transactions which occurred between herself and such lunatic before he became insane; and this is true even though upon the trial an order was passed, without objection, making the defendant in his representative capacity also a party defendant, such order not being effectual to make the lunatic himself a party to the case.
2. Where a wife turns over to another a sum of money as the property of her insane husband, at the time of its delivery claiming no interest in such money, and the person to whom it is delivered is afterwards appointed guardian of the insane husband, and in good faith, without notice of any claim on the part of the wife to such money or any portion thereof, lawfully expends the same to the use of the estate represented by him, he can not, upon principles of estoppel, be held answerable in his personal capacity to the person injured for the sum so appropriated; but in order for an estoppel to arise in his favor, the burden is with him to show, not only that he received the money in good faith believing it to be that of his ward, but that he lawfully expended it without notice of the personal claim of the wife.

Argued June 30, — Decided July 28, 1897.

Complaint. Before Judge Kimsey. Hall superior court. July term, 1896.

*Perry & Craig,* for plaintiff.

*G. H. Prior* and *H. H. Dean,* for defendant.

LITTLE, J. The husband of the plaintiff, Mrs. Elliott, having been adjudged a lunatic, was committed to the asylum. Pending the appointment of a guardian for his estate, Mrs. Elliott turned over to Keith, the defendant, some $420.00 in gold, subsequent to which time Keith was appointed guardian of Elliott's estate. After such appointment, Mrs. Elliott brought this action against Keith individually to recover $320.00 of the money so turned over to him, alleging that it belonged to her separate estate and that Keith had converted the same. Keith answered, denying the allegations of the petition, and setting up in substance that the money belonged to the estate of his ward, and that he then held the same, or

its equivalent, in his capacity as guardian, as assets of said estate. Keith as guardian of Elliott also filed an intervention, setting up that the estate he represented was interested in the subject-matter of the suit, and praying that he be made a party to said suit in his representative capacity, and further setting up in said intervention that the money in controversy belonged to the estate of the lunatic, and that he held it as such. This intervention was allowed, and Keith, in his representative capacity as guardian of the lunatic's estate, made a party defendant.

1. We think the proposition is manifest, that a person sued in his individual capacity for a wrongful conversion of personal property may justify by showing that the property alleged to have been wrongfully converted by him was rightly held as the property of a lunatic for whom, subsequent to the conversion, he had been appointed guardian. If the property in fact belonged to the lunatic, and not to the person suing, the guardian's disposition of such property is a matter of no concern to one having no claim to the property or interest in the fiduciary relation which the guardian bears to the lunatic. Upon the trial of the present case, testimony of the plaintiff, to the effect that a part of the money buried under the house (the money in controversy) was her individual money, was ruled out; and with respect to other testimony given by her, the court charged the jury as follows: "If you believe that this money was turned over to this defendant as the money of the estate, the money belonging to Berry Elliott, the husband of the plaintiff, I charge you she would have no right to recover it without showing to you by the evidence that it was her individual money, and she would not be allowed to show that by her oath, as that would be a violation of the law which says that she can not testify as to transactions between herself and husband, who is an imbecile, when he is represented by a guardian. You will have to look to the evidence and see what the truth is; and the mere assertion to the defendant upon her part that it was her money, and what he may have said to her in conversation between them upon this issue, would not be evidence, in her favor, that this particular

money belonged to her; and the fact that she may have sworn that what she said on another occasion is true, would not authorize you to take that as showing title in her, because she can not swear against her husband who is an imbecile."

The ruling and charges here complained of were doubtless predicated upon paragraph 1 of section 5269 of the Civil Code, which reads as follows: "Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person." We are of opinion, however, that the provisions of the statute are not applicable in the present action. Even if the intervention or amendment making the defendant as guardian a party was proper, the plaintiff was not thereby rendered an incompetent witness. The person insane was not a party defendant to the suit, nor did the amendment have the effect to make him a party; and therefore the suit was neither instituted nor defended by an insane person. Under the terms of the statute, the opposite party is not disqualified in a case defended by the personal representative of an insane person. Although the guardian was a party, before the lunatic could be personally affected by a judgment or become a party to the action, it is necessary that process should be prayed against him, should issue against him and should be served upon him. *Scott* v. *Winningham,* 79 *Ga.* 492. According to the authority of the case just cited, the lunatic was in no sense a party to the action; and therefore the opposite party is not excluded by the terms of the statute from testifying even as to transactions or communications with her insane husband, and it follows that the court erred in ruling out the testimony and giving the instructions to the jury above referred to.

2. Soon after her husband had been committed to the lunatic asylum and prior to the appointment of Mr. Keith as guardian, Mrs. Elliott, desiring to leave home, put Keith in possession of the $420.00 in gold heretofore mentioned, and, so far as the record discloses, without notice at that time that she claimed

any of the money as her individual property. During her absence Keith was appointed guardian for her insane husband; and she testified, that upon her return home she told Keith that $320.00 of the money was her individual property, and demanded that the same be paid over to her, which, however, Keith declined to do. Under this state of facts the presiding judge charged the jury as follows: "She would have no right to recover it [the money] had she turned it over to him all together. She may have turned it over to him as her own property, without specifying any particular purpose for it to be used; and she had full knowledge 'of him having it appraised as the property of the estate of her husband, his ward, and she raised no objection to it, understood it, that he was going on using it as the estate of her husband, having it appraised as such and distributing it as such. I charge you that if she understood that, although you might believe from the evidence it was turned over to him as her individual money, she would be estopped from asserting her right to the money; and your verdict would be in favor of the defendant, if you believe that from the evidence."

We do not think these instructions, as applied to the facts of this case, correctly state the doctrine of estoppel. The origin of estoppel in pais is probably to be found in the doctrine of equity, that if a representation be made to another who deals upon the faith of it, the former must make the representation good if he knew or was bound to know it to be false. Bigelow on Estoppel, p. 557. Or if one by silence, when it is his duty to speak, permits another to act to his prejudice, such silence will serve as an estoppel upon the former. 7 American & English Encyclopædia of Law, p. 12. However, in order to raise an estoppel by conduct or matters in pais, one of the elements essential to such estoppel is, the party to whom the representation or concealment is made must have been ignorant, actually and permissibly, of the truth of the matter. If he knew or under all the circumstances ought to have known the facts, the representation, silence or concealment is wholly unavailing. Bigelow on Estoppel, pp. 626, 627 and authorities cited; 7 Am. & Eng. Ency.

Law, p. 15; 106 U. S. 447, 648; 98 Mo. 532; 90 Ind. 291; 22 Minn. 15; 13 S. C. 25. If prior to his appointment as guardian Keith received this money from Mrs. Elliott, she at the time claiming no interest in it, and afterwards, upon his appointment as guardian of the insane husband, he in good faith, and without notice of any claim on the part of the wife to such money, lawfully expended the same to the use of the estate represented by him, he could not at the wife's instance be held answerable in his personal capacity to her for any portion of the sum so appropriated, although in fact some portion thereof was her individual property. Having induced him by her conduct to believe that the money belonged to the estate of his ward and stood by silently until he had expended it for the use of the estate he represented, she would be estopped to aver to the contrary. But if, as is contended by the plaintiff, Keith was apprised of her claim to the money prior to its expenditure for the use of the estate, no estoppel could arise in his favor. In such a case it could not be said that he was misled by the conduct of Mrs. Elliott, nor in ignorance of the truth of the transaction. The burden was upon him to show, not only that he received the money in good faith, believing it to be that of his ward, but that he lawfully expended it without notice of the personal claim of the wife.

The charge of the court having left out of consideration this essential element necessary to work an estoppel against the plaintiff, the judgment must be

       *Reversed. All the Justices concurring.*