### FLOYD *et al. v.* RICKETSON *et al.*

1. A deed made by a wife to her husband in pursuance of a sale by her to him, without the same being allowed by the superior court of the county of her domicile, though void as title, may be good as color.

2. Record of a deed executed in 1889 .was not necessary in order for it to operate as color of title, so that possession of a part of the tract of land therein conveyed would constructively extend to the limits of the lot or known tract described in it.

3. An order granted by the court of ordinary, authorizing an administrator to sell the lands belonging to the estate of his intestate, in all respects regular except that it was not signed by the ordinary, is valid, if entered on the minutes of the court of ordinary and they are signed by the ordinary; and in the absence of any proof to the contrary, it will be presumed that the ordinary signed the minutes.

4. "A recital, in an administrator's deed, of a compliance with all the requisites of the law necessary to be done after the order of sale is granted, is prima facie evidence that those requisites were complied with."

5. The administrator's deed admitted in evidence in the present case, though not good as color of title during the life-estate therein created, was admissible in evidence for whatever light it might shed upon the bona fides of the husband in the subsequent transaction wherein his wife conveyed to him a portion of the land covered by this deed.

6. Where in a suit involving the title to land the plaintiffs relied upon a deed from the deceased husband of one of the defendants, and the defendants contended that such deed .was void and that when it was executed the legal title to the land was in the grantor's wife, where it had since remained, her son by such grantor was not, by reason of this relationship on his part, incompetent to testify to declarations of his father, prior to the making of the deed, in disparagement of his title to the land in question.

Submitted July 4,—Decided December 21, 1907.

Injunction. Before Judge Parker. Coffee superior court. May 11, 1907.

Rebecca Ricketson and her children, Fannie M. and Jesse C. Ricketson, brought an equitable petition against Roan Floyd, to enjoin him from cutting the timber on the east half of lot 113, in the sixth district of Coffee county, alleging his insolvency, and that the damages from his cutting the timber would be irreparable. The defendant answered that he was cutting the timber as the agent of his mother, Rhoda Floyd, who owned the timber and the land upon which it grew. Rhoda Floyd, upon her petition, was made a party defendant to the case. She alleged, that she was the owner of all of lot 113, was the widow of R. P. Floyd, and that on November 13, 1889, she made a deed to the east half of such lot to him, wherein the consideration expressed was $245; that this deed and pretended sale were not approved or allowed by an order of the judge of the superior court of her domicile, and, being a

pretended sale by her to her husband, were void. Upon the inter-
locutory hearing, the plaintiffs introduced a warranty deed from
Timothy Kirkland to Henry Peterson, dated July 21, 1840, and
recorded October 9, 1853, conveying all of lot 113, in the sixth
district of Coffee county, Ga. They also introduced a deed from
Henry Peterson to Mark Lott, dated December 30, 1840, recorded
January 4, 1907, conveying the same premises. They then intro-
duced, over the objection of the defendants, a deed from the ad-
ministrator of Mark Lott; a copy, from the minutes of the court of
ordinary of Coffee county, of an order granting leave to such ad-
ministrator to sell the land belonging to his intestate; and a cer-
tificate from the clerk of such court; which were, respectively, as
follows:

"State of Georgia, Coffee County. This indenture made this
the first day of January in the year eighteen hundred and sixty
seven between Elisha Lott, administrator of the goods and chattels,
rights and credits and which were of Mark Lott deceased of the
first part and Reuben P. Floyd of the second part. Witnesseth,
that whereas the ordinary of said county of Coffee county did at
his court hold in the month of October last past to empower the
said Elisha Lott as administrator as aforesaid to sell and dispose
of all the real estate of the said Mark Lott deceased, and whereas
the said Elisha Lott having published notice of said sale for sixt
days in a gazette published in the city of Quitman Brooks and
said count and having complied with all the requistins of the law
therein, did on the first tuesday of this present month prcead to
expose the lott of land hereinafter described fore the sale at the
court house between the houres in said county between the hours
limited by law for sale sales and whereas the said R. P. Floyd
bought said lot of land no. 113 and for the sum of fifty three dol-
lars which was the biggest sum bid for the said lot no. 113 the said
Elisha Lott administrator as fore said sum of fifty three dollars
paid the receipt where of is hereby acknowledged has granted bar-
gain and sold the said lot of land 113 to be delivered to said R. P.
Floyd at the death of said Rodey Floyd at closeofdowry,conveyed
unto R. P. Floyd and by these presents does grant bargen sell unt
R. P. Floyd and convey into Mark Lott his airs and assigns a lot
of land in the 6 Destrict appling now Coffee County. known in
the pland of said County as lot number 113 in the said Sixth de-

strict of apling now Coffee County to have and to hold the said primises to the said Mark Lott his heirs and assigns for ever in testimony whereof the said Elisha Lott administrator has hereto set his hand and seale this day and year above written.

John Barber                           Elisha Lott (L. S.)"

J. W. Overstreet, J. P."

"Court of ordinary, November term, 1896. Whereas Elisha Lott, administrator on the estate of Mark Lott deceased, made application for citation for leave to sell all the land belonging to said estate, ordered that Elisha Lott adminisrator have leave to sell said land."

"ORDINARY'S OFFICE—SS. I, W. P. Ward, Ordinary and ex-officio Clerk of the Court of Ordinary of said County, do hereby certify that I have compared the foregoing copy of order to sell lands belonging to estate of Mark Lott, deceased, as recorded in minutes book 'A' page 331, with the original record thereof, now remaining in this office, and the same is a correct transcript therefrom, and of the whole of such original record. In testimony whereof, I have hereunto set my hand and affixed the seal of the Court of Ordinary, this the 10th day of May, 1907.

                          W. P. Ward,

                Ordinary and ex-officio C. C. O."

The plaintiffs also introduced a warranty deed from R. P. Floyd to Rebecca Ricketson and her two children, Fannie Missouri Ricketson and Jesse Clifford Ricketson, dated June 14, 1898, recorded January 2, 1899, conveying the east half of lot 113, in the sixth district of Coffee county, Ga., the consideration recited being, "one dollar and services to be rendered during his (Floyd's) lifetime." Evidence for the plaintiffs tended to show, that there were some twenty-five to forty acres of cleared land on the east half of lot 113, which had been in cultivation for many years, and that R. P. Floyd was in adverse possession of this half lot from the date of the deed from Rhoda Floyd to him until the execution of the deed by him to the plaintiffs, and that the plaintiffs were in adverse possession of the same from the date of the deed from R. P. Floyd to them until some time in June, 1905. They also introduced evidence showing the insolvency of both Roan Floyd and Rhoda Floyd, and that the cutting of the timber in question would result in irreparable damages; which evidence was not controverted.

The defendants contended that the deed from R. P. Floyd to the plaintiffs was based upon an immoral consideration, viz., a promise and contract on the part of Rebecca Ricketson of concubinage for life with R. P. Floyd. They introduced evidence tending to prove such contention, while the plaintiffs submitted evidence tending to disprove it. The plaintiffs put in evidence an affidavit of Rhoda Floyd, to the effect that she married R. P. Floyd in 1864, and that soon after the marriage he went upon lot of land 113 and lived thereon until the time of his death. In another affidavit of Rhoda Floyd, put in evidence by defendants, she said, in effect, that she and R. P. Floyd lived together for twenty years or more after their marriage, and then separated on account of his attentions to Rebecca Ricketson, and that after such separation he built a one-room house on the east half of lot 113; and further, "that the husband of deponent, after building the house above mentioned, requested this deponent to make him a deed to the east half of said lot of land, which request was refused by deponent; that the said R. P. Floyd proposed to make a deed to deponent to the west half, thereby relinquishing whatever claim he might have, if any, to the west half, and for deponent to make him a deed to the east half, proposing in this way to divide said lot of land, but deponent, owning the entire lot, bitterly refused to make the deed; that she finally consented to make the deed in question, and did make the deed which is now relied upon by the plaintiffs in the above-stated case, all of which was done contrary to the wishes of deponent; that the deed above mentioned was not a gift; that there is a consideration expressed therein, which the said R. P. Floyd claimed to have paid, by making deponent a deed to the west half of said lot; that said deed was not authorized or approved by the judge of the suprior court as required by law."

A witness for the plaintiffs testified, that R. P. Floyd deeded to Rhoda Floyd the west half of lot 113, in the sixth district of Coffee county, and she deeded to him the east half of this lot; and that when Rhoda Floyd made the deed to R. P. Floyd, he took possession of the east half of the lot and built houses and outhouses and opened up a farm thereon, and lived upon the same until his death.

When the administrator's deed above set forth, the copy from the minutes of the court of ordinary of the order authorizing the

sale by the administrator, and the certificate from the clerk of that court were offered in evidence, the defendants made the following objections to their admission: (1) They were irrelevant and immaterial. (2) The deed was not "connected with a good and perfect title from the State or any other source." (3) It purported "to convey a reversionary interest to be enjoyed after the death of one of the defendants in the present case, and, delaying possession of the land in controversy until the death of said defendant, is not admissible as color of title." (4) The order of the ordinary authorizing the administrator to sell the land was not signed or issued by the ordinary of Coffee county. (5) It does not appear from the deed that the sale was advertised the requisite number of days as required by law; and it does not appear that the sale was advertised in the official organ of Coffee county. These objections were overruled.

The defendants offered in evidence the following affidavit of Perry Floyd: "That he is a son of R. P. Floyd, now deceased, and Mrs. Rhoda Floyd, one of the defendants in the present case, now in life; that deponent heard his father say, before he made the deed to the east half of lot No. 113, in the 6th district of Coffee County, Georgia, to Rebecca Ricketson, that he knew that he, R. P. Floyd, had no title to said land under the law, but that he intended to hold it with his gun or die; that deponent heard him make this statement several times; and that Rebecca Ricketson was present and heard the same." The judge rejected this affidavit and refused to consider it, on the ground that Perry Floyd was interested in the result of the litigation, by reason of being the son of Rhoda Floyd.

The defendants also introduced the record of a suit brought by them against the plaintiffs in the present case, for the recovery of the east half of lot 113, in the sixth district of Coffee county, on which the timber in controversy is situated; from which it appeared that said suit had been filed, in the office of the clerk of the superior court of Coffee county, on September 12, 1905, and had been withdrawn by plaintiffs on October 2, 1906, and that the pleadings therein showed that the same issues were raised therein in respect to the title to the land as in the present case.

The judge granted a temporary injunction, and the defendants excepted.

43

*Lankford & Dickerson,* for plaintiffs in error.

*Levi O'Steen* and *J. W. Quincey,* contra.

FISH, C. J.    (After stating the facts.)

1, 2.    If, upon the separation of R. P. Floyd and his wife, Rhoda Floyd, she, on November 13, 1889, conveyed to him the east half of lot 113, in consideration of a given sum of money, or in consideration of his then conveying to her the west half of this lot, and he thereupon entered into possession of the east half of the lot, improved the same by opening up a farm and building houses thereon, and continued in adverse possession until he conveyed such east half to plaintiffs on June 14, 1898, then, without more, the judge was authorized to find that plaintiffs had title to the land in question, by prescription under color.    The deed from Rhoda Floyd, under which R. P. Floyd went into possession, and held possession for more than seven years, was executed in 1889, and did not have to be recorded in order for his actual possession thereunder of a part of the tract of land therein described to become constructive possession of the entire tract, and to be the foundation for a prescription, under color of title, as to the whole of the premises described in the deed.    As he held actual adverse possession of a portion of the east half of lot 113, under color of title to the whole of the same, for more than seven years before he, in 1898, conveyed this half lot to the plaintiffs, title by prescription thereto had ripened in him, and his deed to the plaintiffs transferred it to them, if such deed were otherwise valid.    *Roberson* v. *Downing Co.,* 120 *Ga.* 833 (4) ; *O'Brien* v. *Fletcher,* 123 *Ga.* 427. This is true although the deed to R. P. Floyd from his wife, Rhoda Floyd, might be void as title, because made in pursuance of a sale of her separate estate to her husband, without such sale having been allowed by an order of the superior court of her domicile. For while such deed may have been void as title, it was nevertheless good as color of title if there were no fraud in its procurement, and, from the evidence, there seems to have been none.

3.    The court did not err in admitting in evidence the deed executed by the administrator of the estate of Mark Lott, over the objections of the defendants; the deed being accompanied by a certified copy, from the minutes of the court of ordinary of Coffee county, of an order, granted at the November term, 1866, authorizing the maker of the deed, as administrator of the estate of Mark

Lott, deceased, to sell all the land belonging to such estate. Although it does not appear that either the order or the minutes was signed by the ordinary, yet, as it was entered on the minutes, it will be presumed, in the absence of proof to the contrary, that the ordinary signed the minutes, which was equivalent to signing the order. See *Sweeney* v. *Sweeney*, 119 *Ga.* 76.

4. Nor was there any merit in the objection to the deed, that it did not appear therefrom that the sale was advertised for the requisite number of days required by law and in the official organ of Coffee county. The deed recited that the administrator, "having complied with all the requistins [requisities?] of the law," etc. "A recital, in an administrator's deed, of a compliance with all of the requisites of the law necessary to be done after the order of sale is granted, is prima facie evidence that these requisites were complied with." *Davie* v. *McDaniel*, 47 *Ga.* 195; Civil Code, §3454.

5. While this deed was not connected with a good and sufficient title from the State or from any other source, and taken alone, or in connection with the prior deeds introduced, one to Mark Lott and the other to his grantor, did not show a perfect title, and there was no evidence that the defendant, Rhoda Floyd, claimed under this administrator's deed, so as to make it the common source of title claimed by plaintiffs and defendants, still the deed was admissible in evidence. Our construction of the instrument is, that it conveyed the fee in lot 113 to R. P. Floyd, but that he was not to have possession of the premises until the death of Rhoda Floyd; and therefore neither he nor those holding under him could base a prescription under this deed as color during the life of Rhoda Floyd. But as one of the controlling points in the case is as to whether or not there was moral fraud in the transaction between R. P. Floyd and Rhoda Floyd, in which she conveyed to him the property in question, we think this administrator's deed was admissible as probably shedding some light on this question. For if by this deed the wife, Rhoda Floyd, took a life-estate in the whole of lot 113, and the husband, R. P. Floyd, took the fee therein, they might, after their marital separation, each acting in good faith, have agreed to settle their respective claims to the lot in the manner indicated in her testimony, that is, by the execution of a deed, in fee simple, by her to him to the east half of the lot, and

the execution of such a deed by him to her to the west half thereof. While it did not appear, on the trial, whether Rhoda Floyd claimed under this deed or not, yet the fact that such a deed was in existence, at the time that she made her deed to her husband to the east half of lot 113 and he made her a deed to the west half thereof, was a circumstance which the jury might take into consideration upon the question as to the good faith of R. P. Floyd in that transaction between his wife and himself. For only moral fraud on his part would prevent him from basing a prescription upon adverse possession under the deed from Rhoda Floyd to himself. The administrator's deed was very inartistically, unskillfully, and awkwardly drawn, and is therefore difficult of construction, and it may well be inferred that differences might have arisen between the husband and wife, after their domestic disagreement began as to their respective rights under it, and that they agreed to settle these differences and contentions by the exchange of deeds shown by her testimony.

6. The judge erred in rejecting the affidavit of Perrry Floyd, offered by the defendants, as it was certainly relevant on a controlling question in the case, viz., as to the good faith of R. P. Floyd in taking the deed from his wife; and the fact that Perry Floyd was the son of defendant, Rhoda Floyd, did not disqualify him as a witness. *Blount* v. *Beall*, 95 *Ga.* 182. For this error the judgment granting the injunction will have to be reversed, as we can not say what would have been the ruling of the judge had the affidavit been admitted and considered by him.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*