### STONECIPHER v. KEAR.

1. Where purchase-money is paid by a husband who causes the conveyance to be made to his wife, the transaction, in the absence of evidence to the contrary, is presumed to be a gift by him to her.
2. A sale by a wife to her husband is void when made without being allowed by an order of the superior court of her domicile.
3. When the estoppel sought to be set up relates to the title to real estate, the party claiming to have been influenced by the other's acts or declarations must have been ignorant, not only of the true title, but ., also of any convenient means of acquiring such knowledge.
4. The owner of property is not estopped from setting up his title thereto by reason of acts and declarations on his part, alleged to have induced another to buy it as the property of a third person, unless it appear that the purchaser was ignorant of the falsity of such alleged inducements and really acted upon them and not upon his own knowledge or judgment.
5. One who silently stands by and permits another to purchase his property, without disclosing his title, is not guilty of such fraud' as estops him from setting up title thereto against a purchaser with notice.
6. Applying the well-settled principles of law above stated to the evidence in this case, the verdict rendered for the defendant in error was unauthorized, and the court, therefore, erred in overruling the motion for a new trial.

Argued June 19,—Decided December 16, 1908.

Complaint for land.   Before Judge Fite.   Whitfield superior court.   November 26, 1907.

*W. E. Mann,* for plaintiff.   *R. J. & J. McCamy,* for defendant.

Fish, C. J. . Mrs. Estelle Stonecipher brought an action of complaint for land against James Kear. The defendant in his answer admitted possession; and the only defense made was that the plaintiff was estopped from recovering the land in question, by reason of the fact that defendant had been induced to purchase it on account of assurances made by plaintiff to defendant's agent, to the effect that plaintiff did not own or have any interest in the land, but that the same belonged to her husband, John Stonecipher, from whom defendant subsequently purchased, relying upon such assurances, and to whom he paid the purchase-price. There was a verdict for the defendant. The plaintiff moved for a new trial, and to the overruling of this motion she excepted.

Upon the trial the plaintiff put in evidence a deed from B. C. Wilson and others, conveying the premises in dispute to her, dated November 21, 1902, and recorded August 24, 1903; also, a deed from herself to J. N. Stonecipher, conveying the same land, recorded December 22, 1904, the date of its execution not appearing in the brief of evidence contained in the record. Plaintiff testified that J. N. Stonecipher was her husband, and that the deed she made to him to the property in question was in pursuance of a sale made of it by her to him, without being allowed by an order of the superior court of the county of her domicile. Plaintiff endeavored to show that the consideration of the deed from Wilson and others to herself was her money paid to the grantors by her husband, J. N. Stonecipher; but the evidence submitted by her on this point was not sufficient to show that the money was hers. Even under her own testimony, the money legally belonged to her husband.

Where a husband pays his own money in the purchase of land and causes the conveyance to be made to his wife, the transaction will be presumed to be a gift by him to her, in the absence of evidence tending to show the creation of a resulting trust. Civil Code, §3160; *Kimbrough* v. *Kimbrough,* 99 *Ga.* 134 (25 S. E. 176); *Jackson* v. *Williams,* 129 *Ga.* 716 (59 S. E. 776). A sale by a married woman to her husband, without being allowed by an order of the superior court of the wife's domicile, is void. Civil Code, §2490; *Fulgham* v. *Pate,* 77 *Ga.* 454 (2); *Hood* v. *Perry,* 75 *Ga.* 310; *Flannery* v. *Coleman,* 112 *Ga.* 648 (37 S. E. 878); *Webb* v. *Harris,* 124 *Ga.* 723 (53 S. E. 247); *Carpenter* v. *Booker,* ante, 546 (62 S. E. 983). See also *Williams* v. *Williams Co.,* 122 *Ga.*

44

178-181 (50 S. E. 52, 106 Am. St. R. 100); *Floyd* v. *Ricketson*, 129 *Ga.* 668 (59 S. E. 909). Applying these principles of law to the evidence submitted in behalf of plaintiff, and to the admission in defendant's answer that he held under the conveyance from plaintiff's husband, a verdict in favor of plaintiff for the recovery of the land in question was demanded, in the absence of evidence tending to establish defendant's plea of estoppel.

Was the evidence for defendant sufficient to authorize a finding that plaintiff was estopped? We are clearly of opinion that it was not. There was evidence submitted by the defendant which would have authorized the jury to find, that, some two months prior to the purchase of the land by defendant from the plaintiff's husband, the plaintiff told the defendant's son, while he was inspecting the land in question, that she had no title to or interest in it, but that it belonged to her husband, and he alone had the right to sell it; that defendant's son informed him of these declarations made by plaintiff. But there was no evidence that the defendant's son was acting as the agent of his father, the defendant, when such representations were made by the plaintiff. The son, in testifying about the inspection of the land, when the alleged representations of the plaintiff were made, said: "I just took a notion to come and see if I could find a better place than where we was at, and find land cheaper; come of my own accord, and was looking at the land of my own accord." And there was no evidence that the defendant, in purchasing the land, relied and acted upon the alleged declarations of the plaintiff, that she had no interest in it, and that defendant did not act upon his own knowledge of or judgment as to the title. It does not appear from the record that the defendant testified in the case. While the plaintiff denied that she made the representations to defendant's son, as testified to by him, she did, on cross-examination testify: "I seen Mr. Kear a time or two when he bought the land, but did not have any conversation with him. I knew he was buying it from my husband; I did not tell him anything about my title; I did not think it was any of my business; I did not tell him anything about title in myself. I don't know that the old man come to see me at all; the first time I saw him was over at my home on the place, talking to my husband and Mr. Whaley; I suppose he was talking about buying the place; that is what I thought; I never said a word about it being

mine; I did not think it was any of my affair. John proposed to pay me out of money he got from Mr. Kear the first of the year; he did not pay me anything; I knew he aimed to get the money from Mr. Kear for the land; what he did with the money he got for the land is a question I can't answer; I don't know; he has very little now, I think, and I have got nothing at all. . . I didn't have anything to do with it [the sale of the land] at all. Nobody put me up to bringing this suit at all but myself. I just simply waited so long, kept waiting to get my money from my husband; and when I found I could not get it out of him, I tried to get it out of Mr. Kear. I did not think it was right for me to be beat out of it. I did not wait till Mr. Kear had paid the last note. . . The money had not all been paid before I brought suit. . . I expected to get my money out of John [her hus-. band]; and when I did not get it out of him, I wanted my money or the land one." It did not appear that at the time the plaintiff saw her husband and the defendant together and thought they were trading as to the land, she knew that defendant's son had informed him that she said that the land belonged to her husband and she had no title to or interest in it.

As above stated, the evidence failed to show that defendant, in purchasing the land, relied upon the alleged representations of the plaintiff that the land belonged to her husband. There were circumstances, however, tending to show that defendant acted upon his own knowledge and judgment. The conveyance from plaintiff's husband to defendant and the notes of the latter to the former for the purchase-money of the land were written in Cohutta, but were not signed there. The husband and the defendant, after the deed and notes had been prepared, went to Dalton, the county-site, and to the office of the clerk of the superior court, to see, as the witnesses expressed it, that everything was all right. They had a conversation with the clerk in reference to the matter, but what was said does not appear; and defendant, before the execution of the papers, went to an attorney's office to consult him in reference to the title. "A fraud may be committed by acts as well as words; and one who silently stands by and permits another to purchase his property without disclosing his title is guilty of such a fraud as estops him from setting up such title against the purchaser." Civil Code, §3823. It has been held, however, that the provisions

of this section operate only in favor of a bona fide purchaser without notice. *Brown* v. *Tucker,* 47 *Ga.* 485; *Wilkins* v. *McGehee,* 86 *Ga.* 764 (13 S. E. 84). In *McCune* v. *McMichael,* 29 *Ga.* 312, it was held, that the owner of property is not estopped from setting up his title thereto by reason of acts and declarations on his part, alleged to have induced another to purchase it as the property of a third person, unless it appears that the purchaser really acted upon such alleged inducements and not upon his own knowledge or judgment. There are a great number of cases to the effect that to create the estoppel the person claiming the benefit of it must have been ignorant of the falsity of the representation and must have acted in reliance upon it. 5 Michie's Enc. Ga. Rep. 242. In *Elliott* v. *Keith,* 102 *Ga.* 117, 120 (29 S. E. 155), it is said: "Or if one by silence, when it is his duty to speak, permits another to act to his prejudice, such silence will serve as an estoppel upon the former. 7 American & English Encyclopædia of Law, p. 12. However, in order to raise an estoppel by conduct or matters in pais, one of the elements essential to such estoppel is, the party to whom the representation or concealment is made must have been ignorant, actually and permissibly, of the truth of the matter. If he knew or under all the circumstances ought to have known the facts, the representation, silence or concealment is wholly unavailing." Citing authorities. See, in this connection, *Equitable Mortgage Co.* v. *Butler,* 105 *Ga.* 555, 562 (31 S. E. 395). The language of the Civil Code, §5151, is as follows: "Where the estoppel relates to the title to real estate, the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there is no estoppel." The burden of proof is upon the party relying upon the representation as an estoppel to show that he acted upon it in good faith and in ignorance of the real facts. *Elliott* v. *Keith,* supra.

As the defendant failed to show that he was a bona fide purchaser without notice, so as to bring his case within the provisions of the Civil Code, §3823, as interpreted in *Brown* v. *Tucker,* and *Wilkins* v. *McGehee,* supra, and also failed to show that he acted upon the alleged declarations of the plaintiff that the land belonged to her husband, and that he did not act upon his own knowledge or judg-

ment, he failed to carry the burden of showing that the plaintiff was estopped; and consequently the verdict in his favor was without evidence to support it, and the court, for this reason, erred in not granting a new trial. This disposition of the case renders it unnecessary for us to deal with the other grounds of the motion.

*Judgment reversed. All the Justices concur.*