F. V. HASSAM *v.* J. E. SAFFORD LUMBER COMPANY AND J. E. SAFFORD.

May Term, 1909.

Present:  MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 9, 1909.

*Evidence—Maps and Plans—Verification—Question for Court—*
   *Bill of Exceptions—Construction—Adverse Possession—*
   *Color of Title—Defective Deeds—Constructive Possession—*
   *Scale Books—Witnesses—Cross-examination—Discretion of*
   *Court—Surveyors—Hypothetical Questions—Trover for*
   *Cutting Logs—Measure of Damages—Burden of Proof—*
   *Unintentional Wrong —Instructions —Verdict —Construc-*
   *tion.*

The law of evidence places models, maps, plans, and photographs in
   the same class, and makes them admissible only when properly
   verified, that is, when shown by preliminary evidence, not neces-
   sarily that of the maker, to be sufficiently accurate to be helpful
   to the jury; but such preliminary evidence is addressed to the
   court, whose finding thereon is not, ordinarily, reviewable.

When the admissibility of evidence depends upon the establishment of
   a preliminary fact, that question is for the court.

Where plaintiff was allowed to put in evidence a plan of the land in
   dispute, against the objection that it was not sufficiently authen-
   ticated, and the record, though reciting a part of the ruling on the
   admissibility of the plan, does not show that it discloses all that
   appeared on that subject. but states that "plaintiff's evidence
   tended to show that the plan was a correct representation of the
   territory covered by it," the quoted statement must control, and
   the question of sufficient verification is not reserved.

In trover for timber cut on disputed land, where plaintiff's claim is
   based on adverse possession under color of title, certified copies
   of deeds to plaintiff's lineal grantors, and embracing the disputed
   land, were admissible in his favor, though they did not show a
   record chain of title back to the original proprietor, nor, as a whole,

show title in any one grantee; for, though the possession taken by one of such grantees, under his deed embracing the land where the cutting was done, did not actually cover that ground, it was extended by implication to the limits of his grant, and that possession, which was continued by successive grantees, inured to the benefit of plaintiff in the establishment of his title by adverse possession.

The office of color of title in the acquisition of lands by adverse possession is merely to determine the character of the occupant's possession and define its limits and extent.

An instrument may constitute color of title though it is so defective as to be void as a conveyance, for any instrument naming a grantor and grantee, containing a sufficient description of the land intended to be conveyed, and apt words of conveyance, will give the grantee color of title to the land therein described.

In trover for logs sold to defendant by codefendant who cut them on the land in dispute, and who produced a book kept by defendant in which were entries purporting to be the scale of certain logs, but whether of any of those in dispute it did not appear, it was not error to strike out codefendant's answer that the scale shown by that book was the measurements by which the account between him and defendant was made up and for which he was credited, it appearing that he had cut on adjoining lots, and sold to defendant, other logs not in controversy.

Where an exception to the exclusion of offered evidence is not briefed or argued in Supreme Court, it will not be considered.

It was within the discretion of the trial court to allow plaintiff, in cross-examining a witness, to take an answer to a question that, on his objection, was excluded when asked by defendant in chief, where, after the answer, full opportunity was given defendant to examine the witness on that subject.

It was not error to allow a surveyor to answer a question giving insufficient data and requiring him to compute a certain angle made by a line connecting indicated objects on disputed land, a plan of which was before him, which gave the length of a line required to supplement the elements given by the question, where both the phraseology of the answer and the result he gave showed that the witness had taken the required element from the plan. *Baker & Sons* v. *Sherman*, 71 Vt. 39, distinguished.

Where one takes a deed of real estate, places it on record, enters into possession under it, and actually occupies a part of the premises

which the deed purports to convey, he is presumed to have entered in his own right, to be in possession of the whole to the limits defined in his deed, and to claim possession to those limits, and that claim, coupled with his actual possession of a part, and constructive possession of the remainder, will give title to the whole, if continued for fifteen years.

In trover for timber cut on disputed land where plaintiff's title is based on adverse possession of himself coupled with that of his grantors under color of title, the error, if any, in the instruction that plaintiff could recover on his possession alone, was rendered harmless to defendant by the special verdict that plaintiff had title by adverse possession.

In trover for logs cut on disputed land, evidence of the value of the lumber when loaded on the cars at the natural shipping point was properly admitted as bearing on the value of the logs at the place of conversion.

*Prima facie*, the measure of damages in trover is the value of the property at the time and place of conversion, and, in trover for logs cut on disputed land by one defendant and drawn to the other defendant's mill and there sold to him, if defendants invoke the rule that where, in such case, the wrong is not intentional but the result of mere mistake, the value of the property when first taken must govern, then, if that rule obtains in this State, the burden is on them to bring themselves within it, and their requests for instructions framed on the contrary theory are unsound; and the case having been submitted on the theory that said burden was on plaintiff, a general verdict for him for the value of the property at the mill will not be disturbed, though the jury specially found that plaintiff had not satisfied them by a fair balance of evidence that defendant acted in bad faith, for that is not equivalent to a finding that he acted in good faith.

TROVER for the conversion of logs. Plea, the general issue. Trial by jury at the September Term, 1908, Orleans County, *Hall*, J., presiding. General verdict for the plaintiff for the value of the logs at the mill, with special verdicts fixing their value on the stump, and on the ground at the stump, and the special findings that the plaintiff had acquired ''prescriptive title'' to the disputed land, and that he had not satisfied the jury by a fair balance of evidence that defendant Safford had acted in bad faith in cutting or selling the logs in question. Judgment

for plaintiff on the general verdict. The defendants excepted. The opinion sufficiently states the case.

*S. Hollister Jackson* and *Young & Young* for the defendants.

It was error to charge that if, when the trees were cut, plaintiff was in possession of the land without title he could recover. *Bedee* v. *Lamprey,* 64 N. H. 510.

It was error to allow recovery for the value of the logs at the mill. The weight of authority is to the effect that where, as here, the wrong is the result of inadvertence or mistake, the value of the property when first taken must govern. *Tilden* v. *Johnsson,* 52 Vt. 628; *Bedee* v. *Lamprey,* 64 N. H. 510; *Bolles Wooden Ware Co.* v. *United States,* 106 U. S. 432; *Chapell* v. *Puget Sound Reduction Co.,* 27 Wash. 63, 91 Am. St. Rep. 820; *White* v. *Yawkey,* 108 Ala. 270, 54 Am. St. Rep. 159; *Moody* v. *Whitney,* 38 Me. 174, 61 Am. Dec. 239; *Gates* v. *Rifle Boom Co.,* 70 Mich. 316; *Ayres* v. *Hubbard,* 57 Mich. 322; *Whitney* v. *Huntington,* 57 Minn. 197; *King* v. *Merriman,* 38 Minn. 47; *Ivy Coal & Coke Co.* v. *Alabama Coal & Coke Co.,* 135 Ala. 579, 93 Am. St. Rep. 46; 2 Joyce on Damages, §§1192, 1193, 1199, 1206, 1207; 28 Am. & Eng. Enc. of Law, 722.

*Walter A. Dutton* and *J. W. Redmond* for the plaintiff.

The plan was properly admitted as the record shows that plaintiff's evidence tended to show it to be a correct representation. *Hale* v. *Rich,* 48 Vt. 217; *Wood* v. *Willard,* 36 Vt. 82; *Smith* v. *R. R.,* 80 Vt. 208. And the deeds in question were admissible to show color of title in the several grantees. *Aldrich* v. *Griffith,* 66 Vt. 390; *Crowell* v. *Beebe,* 10 Vt. 33; *Hodges* v. *Eddy,* 38 Vt. 327; *Capen's Admr.* v. *Sheldon,* 78 Vt. 39. The several owners in plaintiff's chain of title are presumed, as a matter of law, to have claimed all the land described in their deeds. *Webb* v. *Richardson,* 42 Vt. 465; *Davenport* v. *Newton,* 71 Vt. 11.

The rule as to title in trover is the same as in trespass. Possession, in either form of action, is sufficient title as against a mere trespasser who carries away the property. *Knapp &*

*Worden* v. *Winchester,* 11 Vt. 25; *Jeffers* v. *Pease,* 74 Vt. 215; *Whidden* v. *Seelye,* 40 Me. 247, 63 Am. Dec. 661; *McCoy* v. *Herbert,* 9 Leigh 548, 33 Am. Dec. 256; *Wright* v. *Guier,* 9 Watts 172, 36 Am. Dec. 108.

Both defendants could be held only for a joint conversion. They were sued jointly, hence for a joint conversion, and the only joint conversion for which they could be holden was the sale of the logs at the mill, and for that they were jointly liable in trover, hence the judgment on the general verdict was right. *Ryford* v. *Montgomery,* 7 Vt. 411; *Rice* v. *Clark,* 8 Vt. 109; *Grant* v. *King et al.,* 14 Vt. 367; *Buckmaster* v. *Mower et al.,* 21 Vt. 204; *Curtis* v. *Crane et al.,* 32 Vt. 232; *Milner & Kettig Co.* v. *LeLeach Co.,* 139 Ala. 135, 101 Am. St. Rep. 63; *Omaha & Grant etc. Co.* v. *Tabor,* 5 L. R. A. 236; *Chamberlin* v. *Shaw,* 18 Pick. 278, 29 Am. Dec. 586; *Velsion* v. *Lewis,* 15 Ore. 539, 3 Am. St. Rep. 184; *Stanley* v. *Gaylord,* 1 Cush. 536, 48 Am. Dec. 643.

PoWERS, J. This is an action of trover for the conversion of certain logs which it is alleged the defendant Safford cut on the plaintiff's land and sold to the Safford Lumber Company, a corporation of which he was president.

1. The plaintiff was permitted to put in evidence a plan of the locality in which the timber was cut. The plan was admitted, not as independent evidence, but merely to aid the jury to a proper understanding and application of the testimony of the witnesses as to the location of the physical objects involved in the controversy. The defendant excepted on the sole ground that the plan was not sufficiently authenticated. The plaintiff's evidence tended to show that three of the lines shown on the plan were drawn from actual surveys. None of the other objects shown,—some or all of which were of importance in the trial,— were located by a survey. But the exceptions state that the ''plaintiff's evidence tended to show that the plan was a correct representation of the territory covered by it.'' A part of the record touching the ruling on the admissibility of the plan is incorporated into the bill of exceptions; but there is nothing to show that it embraces all that appeared on this subject, and the statement above quoted must control. So were the question of the sufficiency of the verification before us, it would be difficult

to say, in the face of *Hale* v. *Rich*, 48 Vt. 217; *Wood* v. *Willard*, 36 Vt. 82; and *Smith* v. *Ry. Co.*, 80 Vt. 208, 67 Atl. 535, that the plan was improperly admitted. But the question is not before us. Models, maps, plans, and photographs belong, in the law of evidence, to the same class, and are admissible only when properly verified. That is to say, preliminary evidence is required to show that they are sufficiently accurate to be helpful to the jury. As Prof. Wigmore puts it, they are not to be received anonymously, but some one, not necessarily the maker, must stand forth as their testimonial sponsor. I Wig. Ev., §793. But this preliminary evidence is addressed to the court,—the preliminary question of the sufficiency of the verification, though a question of fact, is for the determination of the court, and is not, ordinarily, reviewable. *State* v. *Cook*, (Conn.) 53 Atl. 589; *Jameson* v. *Weld*, (Me.) 45 Atl. 299; *Pritchard* v. *Austin*, (N. H.) 46 Atl. 188; *Randall* v. *Chase*, 133 Mass. 210; *Consolidated etc. Co.* v. *State*, (Md.) 72 Atl. 651. It is like the question whether a communication is privileged, *Childs* v. *Merrill*, 66 Vt. 302, 29 Atl. 532, whether a witness is competent, *Cairnes* v. *Mooney*, 62 Vt. 172, 19 Atl. 225, whether a confession was voluntary, *State* v. *Gorham*, 67 Vt. 365, 31 Atl. 845, whether an ancient Field Book is sufficiently authenticated, *Aldrich* v. *Griffith*, 66 Vt. 390, 29 Atl. 376, and many such cases, all of which come within the general rule that when the question of admissibility depends upon a preliminary fact, that fact is for the court. 1 Wig., §487; 1 Elliot Ev., §28.

2. There was no error in the admission of the certified copies of the deeds beginning with that of Dec. 19, 1863, down to and including those to the Gaysville Mfg. Co. The only objection made to them was (1) that they did not show a title of record back to the original proprietor, and (2) that as a whole they made no title to the land in any grantee therein. But this was not necessary. The plaintiff was not seeking to make a complete record title. He was trying to establish a title by adverse possession, and in aid of his possession was attempting to show that he was in under color of title. His offer of the deeds was made in connection with evidence tending to show that he and his grantors named in said deeds had been for the requisite time in that kind of possession thereunder which the law terms adverse. The deed first named embraced the land in controversy.

29

The possession which the grantee therein took, though it did not cover the very ground on which this cutting was done, was extended by implication to the limits of his grant. This possession which was continued by the successive grantees inured to the benefit of the plaintiff and was available to him in the establishment of his title by adverse possession.

3. The deed from the Gaysville Manufacturing Company, which was introduced in the same way and for the same purpose, stands somewhat differently. The grantor therein was a corporation, and it is urged that it was so defectively executed that it could not be admitted even to show color of title. It is signed ''Gaysville Manufacturing Co., by F. P. Holden, Treas.,'' and the acknowledgment is that ''F. P. Holden, Treasurer of the Gaysville Mfg. Co. personally appeared and acknowledged this instrument by him sealed and subscribed to be his free act and deed.'' This acknowledgment purports to have been taken in the State of New Hampshire by a justice of the peace.

It is insisted that the certified copy of this deed was erroneously admitted because the deed was not sealed with the seal of the corporation; because it was not acknowledged by the corporation; because the acknowledgment was not properly authenticated; and because the deed conveyed nothing.

We deem it unnecessary to examine this instrument with a view of determining its sufficiency as a conveyance. We need go no farther than to determine whether it was sufficient to constitute color of title in the grantees therein and their successors; —for all agree that an instrument quite insufficient as a conveyance may constitute color of title. *Aldrich* v. *Griffith,* 66 Vt. 390; *Rice* v. *Chase,* 74 Vt. 362, 52 Atl. 967. The office of color of title in the acquisition of lands by adverse possession is merely to determine the character of the occupant's possession and define its limits and extent. Hence it is that the presence on the record of a document purporting to vest a person with title may amount to color of title in that person, 3 Wig. Ev., §1653, though it be so defective as to be utterly insufficient to convey the title, *Overton* v. *Perry,* (Ky.) 111 S. W. 369, 33 Ky. Law Rep. 931. In such cases it is immaterial that the instrument is void as a source of title by grant. 3 Wig. Ev., §1778. So it has been held that the deed of one as attorney without proof of authority, *Monro* v. *Merchant,* 28 N. Y. 41, a tax collec-

tor's deed without proof of his authority to sell, *Ladd* v. *Du-broca,* 61 Ala. 25, a tax deed based on a void sale, *Osceola Land Co.* v. *Chicago M. & L. Co.,* (Ark.) 103 S. W. 609, an unsealed deed, *Barger* v. *Hobbs,* 67 Ill. 592, a trustee's deed ineffectual because not authorized by the court, *Maynard* v. *Greer,* (Ga.) 59 S. E. 798, a deed void because not joined in by the grantor's husband, *So. Ry. Co.* v. *Hayes,* (Ala.) 43 So. 487, a void deed from wife to husband, *Floyd* v. *Ricketson,* (Ga.) 59 S. E. 909, a deed defectively acknowledged, *Dalton* v. *Bank of St. Louis,* 54 Mo. 105, *Cramer* v. *Clow,* (Ia.) 47 N. W. 59, *State Nat. Bank* v. *Roberts,* (Tex.) 103 S. W. 454,—constitute good color of title. Indeed, any instrument having a grantor and grantee, containing a sufficient description of the land intended to be conveyed, and apt words of conveyance, will give the grantee therein color of title to the land described. Newell Ejec., 774; *Brooks* v. *Bruyn,* 35 Ill. 392. The deed in question meets the requirements of this rule and was admissible for the purpose offered. Whether or not it was properly shown by a certified copy of the record is a question which we do not consider since it is not raised or argued.

4. Error does not appear in the action of the court in striking out the testimony of the defendant Safford relative to the scale book. The witness produced a book kept by the defendant corporation in which were entries purporting to be the scale of certain logs,—but whether they were any or what part of the logs in question does not appear from the exceptions. The witness was then asked "Is that scale, as shown by that book, the measurements by which the account between you and the J. E. Safford Lumber Company is made up and you were credited for?" and he answered, "Yes, sir." Upon request made by the plaintiff this question and answer were stricken out. It is apparent that the account shown by the book may, for aught that appears, have referred to lumber not in any way involved in this case,—to the timber cut on the adjoining lands in Stockbridge and Barnard, for instance, which the witness testified he cut and sold to the defendant corporation. So as the case stood, the account was quite immaterial even if it otherwise would have been admissible. In connection with the striking out of this question and answer, the defendant made an offer, which was excluded, subject to exception. But as the defendants

in their brief only mention the striking out of the evidence quoted and make no allusion to the offer, there is no occasion for enquiring whether there was anything in the offer to change the situation or require attention.

5. In the direct examination of the defendant Safford his counsel asked him if he understood that his fifty acre lot was a square lot. To this question the plaintiff objected and it was excluded. Later on during his cross-examination, counsel for the plaintiff asked him this very same question. Objection was interposed and subject to exception an affirmative answer was taken. Full opportunity was then given defendant's counsel to examine the witness relative thereto,—which was declined—and nothing appears to indicate that it was to the defendants' disadvantage to have the testimony come in when and as it did. It was within the discretion of the court to allow this testimony to be taken as it was and error was not committed.

6. When the witness Flint was on the stand and the plan Ex. A was before him the following question was asked him by plaintiff's counsel: Q. Supposing those (referring to the corner near the big stone and the southeasterly corner of the southerly 50 acre lot on the Barnard town line) to be 39 rods apart, and supposing the southerly line of that 50 acre lot to run north 55 west and that the town line runs north 37 east, what would be the direction of a line connecting the southwest corner of the 50 acre lot and the corner by the big stone?

Various objections were interposed, but the only one which requires consideration is that on the hypothesis, the witness could not tell the direction asked for. The enquiry related to the triangle of land on which the cutting was done. The question gave the witness the direction of two sides of the triangle which enabled him to compute the angle at their intersection. He was given the length of one side. These were all the data embodied in the question, and without more, it is obvious that the witness could not compute the angle asked for. But the plan was before him and gave him the missing information, for the south line of the 50 acre piece was plainly marked thereon as 89½ rods. This gave the witness two sides and one angle, so the computation required was simple enough to a surveyor. That the witness treated the length of the south line as embodied in the question is apparent not only from the result of his com-

putation, but by the answer which he gave.   He says: "Standing at the corner by the stone, a line connecting that point with the point *indicated as the southwest corner of the Safford lot,* the angle at the big stone would be 67 degrees,— the reading would be 32 degrees and a fraction of a minute, I did not carry it out." Indicated where?   On the plan before him, to be sure.   The witness evidently intended only to say that, assuming that the plan was correct, the angle referred to was 67 degrees.   So the question presented is entirely different from the one passed upon in *Baker & Sons* v. *Sherman,* 71 Vt. 439, 46 Atl. 57.

7.   The court in its charge gave the plaintiff the benefit of constructive possession of the triangular piece of land on which the timber was cut, saying: "If you should find by a fair balance of the evidence that Mr. Greenbank took possession of any part of the land described in Ex. C, claiming the whole land described in C, by virtue of that deed, and that his grantees Tupper, Gay, Brooks and Baxter took possession of any part of the land described in Ex. C, by virtue of Ex. D, claiming the whole, and that such possession of said Greenbank and his grantees Tupper, Gay, Brooks and Baxter, under Ex. D, claiming the whole, was open, notorious, exclusive, adverse and continuous for 15 years, such possession would be actual as to that part where acts of possession were made, under the claim I have described, and constructive as to the balance of the land described in Ex. C."   To this instruction the defendants excepted.   The fault which they then found with it and the fault which they now insist upon is that there was no evidence that Greenbank or any of his grantees ever did anything on the triangular piece of land amounting to an act of possession thereon, that there was no evidence that any of them ever put foot upon it or claimed to own it.   All this the bill shows, but we must understand from the bill that it means that there was no evidence that any of these persons made *specific* claim to own the triangle; for the case shows that they were in possession under their deed (the form and sufficiency of which is not questioned), and this is enough to extend their possession to the limit of the grant.   It was not necessary to show by affirmative evidence independent of the deeds that the parties claimed the triangle. The deeds covered it, and the presumption is that one in possession under a deed enters in his own right, *McGrady* v. *Miller,*

14 Vt. 128, and that he claims the land to the limits of his deed, *Webb* v. *Richardson*, 42 Vt. 465. "It is a general principle," says Judge Peck in the case last cited, "that when one takes a deed of real estate and places it on record, and enters into possession under it, and actually occupies a part of the premises which the deed purports to convey, he is presumed to be in possession of the whole to the limits defined in his deed. To the extent he actually occupies, his possession is said to be actual, and as to the residue, constructive. It is presumed, in such case, that the grantee claims to the limits of his deed; and that claim, coupled with his actual possession of a part, and consequent constructive possession of the residue, is operative to gain title to the whole, if continued the requisite period of fifteen years."

8. The exception to that portion of the charge in which the jury were instructed that the plaintiff could recover on his possession alone is not available to the defendant inasmuch as the jury by a special verdict found that the plaintiff had title by prescription. It therefore affirmatively appears that the instruction, if erroneous, was harmless.

9. There was no error in the admission of the evidence as to the value of the lumber when loaded on the cars at Gaysville. It fairly appears that Gaysville was the shipping point for the lumber and whatever the rule of damages it was pertinent to know what it was worth when loaded for market. For its value at any previous time or place from where it was standing to where it was manufactured ready for shipment would depend somewhat upon what it was worth on the cars at the shipping point.

10. The defendants requested the court to charge that the plaintiff, if entitled to recover at all could, under the circumstances, recover only the fair market value of the logs or timber standing on the land in the tree, and excepted to its refusal so to charge. The jury were instructed that the measure of damages was the fair market value of the logs at the time of the sale to and purchase by the Safford Lumber Company—the mill value. To this the defendants excepted. By special verdicts the jury found that the fair market value of the timber on the stump was $215.08; when cut and lying at the stump, $250.44. The verdict was for $356.52,—which we understand to cover the mill value of the logs.

The defendants insist that the rule of damages adopted by the court below was erroneous, and that the plaintiff could only recover the value of the standing trees—invoking the rule of damages announced for cases of innocent trespassers in *Bolles Woodenware Co.* v. *United States,* 106 U. S. 432, 27 L. Ed. 230, 1 Sup. Ct. 398. But before a defendant can take advantage of that rule (if that rule applies in this State) he must bring himself within it. *Prima facie,* the measure of damages in trover is the value of the property at the time and place of conversion. If a defendant would claim the benefit of a modification of this rule on account of his good faith, he must take the burden of showing that he was in fact an innocent converter. And this is eminently fair, for he knows all about how it happened; while the owner may have been entirely ignorant of the facts until long after the wrong is done, and to require him to prove the defendant's bad faith would or might put him to a serious disadvantage. So the defendants are not in a position to invoke the rule for which they contend, for they have not made it appear that Safford was an innocent trespasser. The question was submitted to the jury as though the burden was on the plaintiff to establish his bad faith, and the finding is that the plaintiff had not satisfied the jury by a fair balance of evidence that Safford acted in bad faith. This is not tantamount to a finding that he acted in good faith. And though counsel on both sides may have treated it as such a finding, the court will not, since to do so would require a reversal of the judgment if we should adopt the defendants' rule. Without this essential finding, then, error in the rule of damages does not appear. Nor can the defendants avail themselves of their request to charge or their exception to the charge as given to raise this question;—for both were unsound for the reason that they assumed that the burden of proof was on the plaintiff and failed to recognize the fact that it was upon themselves.

*Judgment affirmed.*