Humphrey *vs.* Copeland.

---

NOEL HUMPHREY, plaintiff in error, *vs.* DELLA C. COPELAND, by next friend, defendant in error.

1. A creditor who receives in payment money belonging to his debtor's wife, knowing it to be her separate estate, acquires no title to it, as against her, whether she consent to the payment or not. The Code, in declaring a sale void when made by the wife to a creditor of the husband in payment of his debt, comprehends, in its reason and spirit, a transaction in money, as well as a transaction in property.

2. Without notice of the wife's ownership, a creditor receiving money is protected, and the burden of proving notice is upon her.

3. A judgment creditor who is protected against a mere equity in his debtor's property for want of notice before his judgment lien attaches, may, when the property is sold by the sheriff to satisfy the judgment, purchase and hold it disencumbered of such equity, although he, in the meantime, received notice. Such estate as the creditor has a right to sell, purchasers have a right to buy.

Husband and wife. Debtor and creditor. Judgments. Judicial sale. Notice. Before Judge POTTLE. Hancock Superior Court. October Term, 1874.

Reported in the opinion.

C. S. DuBOSE; C. W. DuBOSE, for plaintiff in error.

MILES W. LEWIS; ORR & LEWIS, for defendant.

BLECKLEY, Judge.

Copeland is but a nominal defendant in the bill. The real defendant is Humphrey. The complainant is Mrs. Copeland,

wife of Copeland; and the object of the bill is to reclaim from Humphrey a sum of money which her husband paid to him out of her separate estate. Humphrey, the defendant, sold to complainant's husband some land, and, at the same time, some personal property, taking his notes separately for each, and giving bond to make titles to him for the land on payment for it in full. Shortly aftewards, one of the notes covering the price of the land was partially paid in money. This is the money to which the complainant asserts title, and which she seeks to recover by the present bill. The land went into Copeland's possession, and no other payment on the purchase was ever made. The notes given for the personal property were reduced to judgments, and under these the land was seized and sold by the sheriff, as the property of Copeland. Humphrey having first made and had recorded a deed conveying to him the land in fee. At this sale Humphrey was the purchaser; the price bid being about the amount of the judgments. Litigation then arose between Humphrey and Copeland touching the possession, and suit was also instituted by the former against the latter on the notes for the unpaid purchase money. A settlement ensued which disposed of the whole controversy. Copeland acknowledged Humphrey as landlord; agreed to pay him one year's rent, besides certain expenses connected with the legal proceedings; and Humphrey surrendered to him the notes for the unpaid purchase money. Humphrey then sold the land to a third person for the same price which Copeland had agreed originally to pay for it. After all these events had occurred, Mrs. Copeland, the complainant, brought this bill, praying that her husband and Humphrey might be compelled to interplead; that Humphrey might be decreed to repay to her the money he had received from her husband, being, as she alleged, her separate estate; and for general relief. On the trial, there was evidence showing that the money, at the time it was paid to Humphrey was what the complainant alleged it to be, her own. There was also evidence tending to charge Humphrey with notice of that fact. Other evidence tendered to negative notice of the fact *at that time*, as to

a part of the money, at least; and the decree went against him for all of it.

1. The law applicable to the case is contained in sections 1783 and 1785 of the Code, taken in connection with the established and well known rule, that one who receives money *bona fide*, for value, without notice of any defect in the title, is protected. One of these sections of the Code makes void a sale of the wife's separate estate to the husband's creditor, in extinguishment of the debt; and the other declares invalid any sale by her to the husband, made without sanction of the proper court. Money is clearly within the reason and spirit of these restrictions upon the wife's power. Although the word *sale* does not, in the letter, comprehend a transaction in which money alone passes, yet, the transaction itself, with respect to its effect on the wife's fortune, would be the same; and that is the thing to be regarded. The true genius of the law, whatever may be thought to the contrary, is to quibble as little as possible on words, and go directly to the substance. It is true, that for the sake of certainty, it is necessary in construing statutes, to be somewhat critical in the examination of language, but when the object and purpose of the law are free from all doubt, to sacrifice them to avoid slight verbal difficulties would be to bring back the scholastic trifling of the middle ages. What the Code has in view is to protect the wife's *separate estate* against the husband and his creditors, not simply to screen it when it is in the form of property, leaving it exposed when it takes the form of money. Payment by the wife of her husband's debt, whether made in money or other effects belonging to her, is void if the creditor have notice of her title. He acquires nothing and she loses nothing. And the same rule applies where, with like notice to the creditor, the payment is made by the husband with her money, whether she consents to it or not. Under such circumstances, her consent passes for nothing. There has been no repeal or modification of the two sections of the Code to which we refer. They stand wholly unaffected by the act of 1866 and the constitution of 1868. The same reasons of

principle and policy hold now, on this subject, as held when the Code was adopted. These restrictions upon the wife's power, imposed for her own benefit and protection, are perfectly consistent with the act of 1866 and the new constitution, which simply secure to the wife *all* her property and make it her separate estate. She is as much exposed to the "kicks and kisses," especially to the kisses, of her husband, with all as with only a part. If the husband and his creditors are allowed to prey upon her estate at all, it is not likely that they will be the less eager to digest it because it happens to be large. On the contrary, that would only render it the more tempting.

2. According to the record the real pressure of the case, under a proper view of the law, was upon the question of notice. All the rulings of the Court upon other topics were harmless to the defendant, however erroneous. It will be observed that Humphrey may be regarded, in his various relations to the case, as filling three characters: first, he was a creditor of Copeland for both the land and the personalty; secondly, he was in the situation of a purchaser for value from Copeland of the money to which the complainant claims title; and thirdly, he was a purchaser at sheriff's sale of the land when sold under his judgments. There can scarcely be a doubt that in giving credit to Copeland he had a right to look to such interest as his debtor acquired in the land, as a basis of the credit, not only in respect to the price of the land, but also, in respect to the price of the personalty, both debts being created at the same time. As creditor, therefore, he would stand unaffected by any notice which reached him after the judgments were obtained and became a legal lien upon the land, if not by any notice whatever, which he did not have at the time of giving credit. Certainly, as creditor, he could enforce any lien which was incident to his judgments; and whatever they bound would pass to the purchaser at the sheriff's sale, whether that purchaser were himself or another, and whether such purchaser took with or without notice: 13 *Georgia*, 443; 25 *Ibid.*, 687. The purchaser at a judicial sale

gets all the estate that the creditor is entitled to sell under his judgment; and if the purchaser have notice of an equity in a third person, he is protected by the want of like notice to the creditor prior to acquiring his lien. This rule is for the benefit of the creditor, and is founded upon a reason similar to that which protects a purchaser with notice who derives his title from a prior purchaser without notice. It is manifest that the court thought, and so instructed- the jury, that the law would charge the land in favor of complainant, or its proceeds in the hands of Humphrey, upon a notice which reached him at the last moment prior to his purchase at sheriff's sale. The charge of the court, as set out at large in the record, states, in one place, that the defendant would be protected if he made the trade *and bought* the land without knowing, or having reason to know, that the money was complainant's, and in another place it states that if, when he bought at sheriff's sale, or before that, he knew that her money had been put in the purchase without her knowledge or consent, he took the title subject to her equity in the fund. Again, in dealing with the defendant's request to charge touching the effect of the sheriff's sale, the court superadded, that if the defendant knew at the time of the sale that complainant's money *had* been used in the purchase of the land, then she had an equity in the land and he had knowledge of her trust, and *bought* subject to it, and was bound by it. The refusal to give in charge the request without this modification might not have been error, but there was very palpable error in adding to the matter embraced in the request a doctrine on the subject of notice which denies to the purchaser at sheriff's sale the right to buy as much as the judgment creditor has a right to sell. The question of notice at the time of the sheriff's sale was wholly irrelevant. Under the facts of this case, the time for notice was when the complainant's money was received by the defendant. If at that time he knew, or had reasonable cause to believe, it was her money, and it was in fact hers, that was enough. If, on the other hand, he received it as a payment on her husband's note, not knowing

or having reasonable cause to believe that it was hers, she cannot recover it from anybody but her husband.

3. We intimate no opinion upon the final merits of the case, nor on the yea or nay of the alleged notice, but leave the jury, on another trial, to deal with all the facts. In ruling, as we have felt bound to do, that married ·women can repudiate their consent, whether express or implied, to the use of their money in transactions with their husbands, or in payment to their husband's creditors, we do not mean to say that wives are tolerated by the law in combining with their husbands to commit frauds on other people. It is only where *notice* is brought home that a wife's rights will be saved. The burden of proof is upon her, for in every case where money is received and value given, there is a presumption that title passes, which stands until it is rebutted by evidence. And the measure of evidence should not be too scant, in mere deference to sex. When man and wife co-operate for good they can do much good; and so, when they combine against third persons and co-operate for evil, they can do much harm. In protecting women, courts and juries should be careful to protect men, too, for men are not only useful to general society, but to women especially. The exact mean is to do equal justice to both, according to law.

Judgment reversed.