71277. CHATHAM COUNTY HOSPITAL AUTHORITY
& MEMORIAL MEDICAL CENTER, INC. v.
ST. JOSEPH'S HOSPITAL, INC. et al.
71278. STATE HEALTH PLANNING AGENCY v. ST. JOSEPH'S
HOSPITAL, INC.
71279. STATE HEALTH PLANNING AGENCY v. ST. JOSEPH'S
HOSPITAL CENTER, INC. et al.
(344 SE2d 463)

Deen, Presiding Judge.

These appeals involve at bottom the Cardiac Surgery Rule (CSR), which was adopted by the State Health Planning Agency (agency) pursuant to its rule-making authority. OCGA § 31-6-21 (b). The CSR provides: "Adult cardiac surgery services and pediatric cardiac catherization and surgical services are reasonably available and distributed in the State consistent with the need for such services. Absent major population changes, the availability and accessibility of these services fulfill the State's current requirement. This policy will be evaluated at least every two years unless the need is otherwise displayed." Rule 272-2-.09 (13). We do not believe this rule requires a moratorium on considering applications for a certificate.

"The true genius of the law, whatever may be thought to the contrary, is to quibble as little as possible on words, and go directly to the substance." *Humphrey v. Copeland*, 54 Ga. 543, 545 (1875). The uncluttered substance of these cases, despite almost 7,000 pages of combined appeals records, appears to be: (1) the State Health Planning Agency (agency) found the cardiac surgery rule placed no two-year moratorium upon applications but merely required a showing of need, which St. Joseph's Hospital failed to do; (2) the State Health Planning Review Board (board) affirmed the agency's denial of the application because it found that the cardiac surgery rule basically precluded applications for two years unless a party could convince the agency to change this particular rule, but it also advised that were there no such rule it would have reversed the agency's finding that no need was shown; (3) the superior court agreed with the agency's flexi-

ble interpretation of the cardiac surgery rule but with the board's advisory finding that need had been shown, although it also held that the rule actually was inapplicable because it was not in effect at the time St. Joseph's Hospital's application was filed.

It appears that the cardiac surgery rule, as correctly interpreted by the agency and superior court, actually is of little consequence in these cases. The net substance of the "approved" rule is that an applicant must show need for the additional services. There seems to be no dispute that in the alternate or advisory portion of the board's decision, which was approved by the superior court, the applicant had precisely that burden. In short, regardless of the superior court's or board's positions concerning the validity or applicability of any cardiac surgery rule, the fact remains that both tribunals required the applicant to show need. No sound reason exists for returning these cases to the board so that it may reconsider the matter now that it has been made aware of the rule that an applicant may be granted a certificate upon a successful showing of need, when the superior court and board in fact did what the rule required. The compliance with the dictates of the flexible cardiac surgery rule may have been inadvertent, but it was compliance nonetheless.

The record amply supports the superior court's and the board's finding that need for the additional services was shown. The board was the ultimate finder of fact, and the superior court and this court are bound by the any evidence rule to the board's finding that the need existed. Accordingly, the superior court's order directing the agency to issue the certificate, as well as its order validating the rule, are affirmed.

*Judgments affirmed. Banke, C. J., McMurray, P. J., Birdsong, P. J., and Sognier, J., concur. Carley, Pope, and Beasley, JJ., dissent. Benham, J., concurs in the judgment of the dissent only.*

BEASLEY, Judge, dissenting.

St. Joseph's Hospital applied to the agency for a certificate of need[1] to institute a new open heart surgery program at its facility in Savannah. The agency considered the application, took into account the existing services and current needs as demonstrated by the evidence, applied the CSR and statutory standards and Plan and its general rules, and denied the application because in its opinion a need for the proposed additional services had not been demonstrated. The agency issued its lengthy findings and conclusions and notified St. Joseph's that an appeal could be taken to the State Health Planning Review Board.

---

[1] And for approval under Section 1122 of the Social Security Act; action in regard to it was identical, so it will not be mentioned again in order to avoid cumbersomeness.

The appeal was taken. Memorial Medical Center, which is owned by Chatham County Hospital Authority, was interested because it was the only hospital currently providing open heart surgery in Savannah, so it intervened at the board stage pursuant to OCGA § 31-6-44 (b). An extensive evidentiary hearing was conducted in accordance with OCGA § 31-6-44 (c). The board issued its order in the alternative.

First, it interpreted the CSR to mean that the agency had expressed its determination, by way of the rule, that there were enough open heart surgery services available in Georgia and that this determination would be reevaluated in two years. This interpretation was deemed preclusive, or in effect a moratorium, which by way of the last clause of the CSR, could be changed by the agency if a need was shown that would cause it to change the CSR earlier. That is, the board considered the CSR as preventing the obtaining of a certificate of need unless someone convinced the agency that the determination should be changed before the two-year reevaluation. Thus it viewed the situation as a two-step one: if someone wanted to change the determination contained in the CSR, it would have to prompt the agency to change it. Then someone could apply for a certificate of need pursuant to a more friendly determination. The board was of the view that *it* had no authority to change the determination, and that it must apply this rule which it construed to set out the agency's "intent . . . to limit open heart surgery in Georgia to the twelve hospitals that currently provide it." That being the case, and applying this interpretation of the CSR, the denial by the board which followed was inevitable.

Then the board embarked upon an alternative decision.

It said that since the meaning and validity of the CSR was then in litigation, it would also set forth a decision absent a consideration of the CSR, in case the rule was judicially deemed invalid. In doing so, it measured the application against the State Health Plan, its own newly fashioned criterion of "need in 1989," and cost control, one of the standards set out in the statute and the agency rules. OCGA §§ 31-6-1 and 31-6-42 (a) (1); Rule 272-2-.08 (1) (b) (1). Based on these criteria, it found that the evidence supported a finding of a need for additional capacity for open heart surgery in Savannah in 1989. Thus, it concluded, if the CSR does not apply, (i.e., "but for" the rule) the application of St. Joseph's should be approved and a certificate of need issued. One member dissented from this alternate decision, being of the opinion that, assuming the non-application of the CSR, and taking into account the other criteria mentioned above, a need was not established.

These decisions were appealed to the superior court for judicial review, as provided by OCGA § 31-6-44 (i), by St. Joseph's and by

Chatham/Memorial, each challenging part of the decision. St. Joseph's had earlier also filed an action for declaratory judgment against the agency, seeking judicial invalidation of the CSR. Both of the appeals, and the suit for declaratory judgment, were consolidated for consideration by the superior court. Before it issued its order, the two Fulton County cases involving the CSR were dismissed by the Court of Appeals for lack of jurisdiction (see *State Health Planning Review Bd. v. Piedmont Hosp.*, 173 Ga. App. 450 (326 SE2d 814) (1985)), and the superior court took note of it.

The court examined the CSR, the history of its making pursuant to OCGA § 31-6-21.1, and what it perceived to be the board's interpretation of it. The court found that the board gave a "preclusive interpretation" to the CSR and considered it as a "no need" and thus "conclusive determination" by the agency, creating an "irrebuttable presumption" against an applicant for a certificate of need. Such an interpretation, the court held, was erroneous for it would render the CSR invalid for a number of reasons: it would conflict with the purposes of the State Health Planning and Development statute and the state policy contained therein (OCGA Chapter 6); it would be inconsistent with the State Health Plan adopted pursuant to the statute; it would not conform to the statutory and general agency rule considerations to be given an application; it would completely eliminate board review and thus cut off its statutory function; it would "foredoom" an application to denial; it would not be in keeping with the apparent intention of the agency or the legislative committees involved in the making of the rule; and it would violate constitutional due process by depriving an applicant of a meaningful hearing.

The court then gave consideration to whether the CSR could be interpreted so as to be valid and concluded that it could and should be, upon the principle that where a statute is doubtful in meaning, the court should interpret it so as to be constitutional. *Columbus v. Rudd*, 229 Ga. 568, 569 (3) (193 SE2d 11) (1972); accord *Forrester v. Culpepper*, 194 Ga. 744, 749 (22 SE2d 595) (1942). The court interpreted the CSR as creating a "rebuttable presumption," a "flexible interpretation" which would allow leeway to the agency and the board in considering applications and would allow the applicant to demonstrate need. That, the courts reasoned, was the whole purpose of the legislative committee's recommendation that the clause "unless the need is otherwise displayed" be added to the agency's proposed rule. The addition was made, and thereby the rule did not create in effect a moratorium on such applications.

Although it thus interpreted the CSR, which would have led to a reversal of the board's decision and potentially the reinstatement of the agency denial which had demonstrably applied the rule in a flexible manner, the court ruled that the CSR should not have been given

retroactive effect to St. Joseph's application because it was filed before the CSR was adopted. In this regard the court erred. The rule to be applied is the one in effect at the time of the decision, not at the time of the application. OCGA § 31-6-49 (4); *Health Help Svcs. v. State Health Planning Agency*, 174 Ga. App. 640, 641 (1) (329 SE2d 628) (1983); *Loyd v. Ga. State Health Planning &c. Agency*, 168 Ga. App. 850, 851 (310 SE2d 738) (1983); *Osteen v. Osteen*, 244 Ga. 445, 446 (260 SE2d 321) (1979).

Finally, the court considered the appeal from the board's alternate decision, wherein the board had considered the merits of the application, sans the CSR. In this regard, despite the fact that the board had expressly limited its consideration to the statutory standards and Plan and *general* agency rule considerations, and had eliminated application of the CSR altogether so that its judgment would be known in the event the CSR were judicially declared invalid, the court upheld the board's finding of need.

In sum, the court reversed the board insofar as the preclusive interpretation of the CSR was concerned; it interpreted the CSR instead to allow the *board* to approve an application based on a showing of need by an applicant upon application of statutory considerations and general considerations and standards of agency rules; and finding that the board had done that in its alternate decision, it affirmed the approval of the application and modified the board decision to direct the agency to issue the certificate.

Thus, while the court reinterpreted the CSR so as to allow an applicant to overcome the policy determinations set out in it, and with this meaning by judicial construction to be a valid rule, the court affirmed the board's conclusions which were based on a complete non-application of the CSR. In light of the court's earlier conclusion that the CSR could not be given retroactive effect to St. Joseph's application, the court apparently meant that the alternate decision of the board *without* the CSR was a proper approach but for the wrong reason. That is, the board properly did not take the CSR into account in determining whether the certificate of need should be granted. But this was so because the CSR was not retroactive, not because it was invalid as preclusive.

In conformity with this order in the appeals to it from the administrative decision of the board, the court entered an order in the declaratory judgment action. It declared that if interpreted as a preclusive rule, the CSR is invalid. It declared that it may not be applied retroactively. It declared that the CSR must be interpreted to allow the board to approve St. Joseph's application since the board found that the need had been demonstrated, in satisfaction of statutory considerations and the general considerations and standards in the agency's rules (i.e., without application of the CSR).

Now we must determine whether the court was correct. The agency has appealed from the declaratory judgment action. Chatham/ Memorial and the agency have appealed from the decision in the appeals from the board.

Last month the Supreme Court of Georgia decided *Dogwood Square Nursing Center v. State Health Planning Agency*, 255 Ga. 694 (341 SE2d 432) (1986). According to it, the board is not authorized to deem an agency rule inapplicable to a case to which it applies. Neither is it authorized to modify the rule (in *Dogwood*, to make an exception) or change it (in *Dogwood*, to construe it differently than its express terms). The reason is that the State Health Planning and Development law provides for the scope of the board's function in appeals regarding certificates of need. OCGA § 31-6-44 (d). The "final agency decision" is that of SHPA, not the board, and the proceedings before the board are "the administrative remedy." OCGA § 31-6-44 (b). Thus, the principle that judicial deference must be given to the final agency decision relates to SHPA's decision and not to that of the board. *Bentley v. Chastain*, 242 Ga. 348, 349 (1) (249 SE2d 38) (1978). It is the agency and not the board which has the quasi-legislative rule making authority. Agencies also act in a quasi-judicial capacity when, " 'within the exercise of their power, they are called upon to make factual determinations and thus adjudicate, . . .' " *Bentley*, supra at 350.

Applying *Dogwood* to the case before us, we look first to the *agency's* interpretation of the CSR. Its interpretation is due judicial deference. See *DeKalb County v. Metro Ambulance Svcs.*, 253 Ga. 561, 562 (1) (a) (322 SE2d 881) (1984); *Strickland v. Douglas County*, 246 Ga. 640, 642 (1) (272 SE2d 340) (1980). Its decision on consideration of the application clearly shows that it applied all of the relevant criteria, including the CSR, and that it gave St. Joseph's ample breadth and opportunity to demonstrate a need which would overcome the factual determinations expressed in the CSR. It set out its findings of fact and concluded that a need for additional open heart surgery service in Savannah had not been demonstrated. As shown by its order, it regarded the factual determinations in the CSR to be in the nature of rebuttable presumptions. It did not refuse to consider the application. Nor did it first require St. Joseph's to persuade it that the rule should be changed, as though the last clause meant that a statewide need had to be first shown, and a rule change effected before the contemplated two-year evaluation, in order for an application to be considered on its merits. Instead, it did consider the application on its merits, directly, thus construing the last clause to mean that the applicant had to show a need as related to its case, not a need which would bring about reevaluation of the CSR at that time rather than at the end of two years.

We agree with this interpretation (to which we must give deference because it is the agency's[2]), and not with the preclusive one which the board inadvisedly gave. The superior court also gave this interpretation of rebuttable presumption after its own analysis, but it focused then on what the board had done and did not articulate that the agency had not only interpreted the rule likewise, i.e., so that it was lawful, but also that the agency had applied it with such interpretation to St. Joseph's application.

Then the court erred in ruling that the CSR could have no effect in this case because of non-retroactivity. See OCGA § 31-6-49 (4). *Health Help Svcs. v. State Health Planning Agency; Loyd v. Ga. State Health Planning &c. Agency* and *Osteen v. Osteen,* supra. It was this ruling that prompted the court to affirm the alternate decision of the board made without application of the CSR.

Since the rule is valid and was properly applied by the agency, the court erred also in allowing the board's approval of a certificate of need *without* application of the rule (the board's alternate decision) to be affirmed and in modifying that board order to direct the agency to issue a certificate of need to St. Joseph's. The reason is that the rule contains factual determinations by the agency which are in the nature of rebuttable presumptions and thus evidentiary.

The board gave no effect to a rule which had been adopted by the agency in full conformity with the statutorily-mandated procedure for rule-making, including the legislative approval of the rule by way of the legislature's designed method of approving it through its own committees assigned to the subject matter. In fact, the General Assembly through those committees had added to the rule a significant provision, thereby manifesting the legislature's consideration of the policy regarding cardiac surgery services set out in the rule and acknowledging it as the policy of this state.

By completely ignoring the rule and its stated policy and the evidentiary effect it had on fact-finding and the burden of proof on the applicant, the board found a basis for issuance of a certificate of need. It was absolutely contrary to law to do so in a manner which refused to apply a valid and existing rule of law which was without question applicable. This not only skewed the board's fact-finding process. It rendered the rule of law of no effect, in complete violation of the principle that a legislative body is presumed to mean something by its passage of law. *Wilson v. Bd. of Regents,* 246 Ga. 649, 650 (272 SE2d 496) (1980). Therefore the law must be given effect and not rendered

---

[2] And we would also give deference to the agency's interpretation of the statute's intended purposes when it adopted the CSR in order to administer the statute. *National Advertising Co. v. Dept. of Transp.,* 149 Ga. App. 334, 336 (2) (254 SE2d 571) (1979); *Mason v. Svc. Loan &c. Co.,* 128 Ga. App. 828, 831 (198 SE2d 391) (1973).

moot.

The board had never considered the application on review in light of the CSR as interpreted by the agency, as it was bound to do. Thus its unbalanced determination could not be upheld, even if the court was persuaded by the other evidence that a need had been demonstrated absent the presumption. Such a determination was outside its own jurisdiction as an appellate court. OCGA § 31-6-44 (i).

The judgments of the superior court should be reversed with direction that further action be taken in conformity with this analysis.

I am authorized to state that Judge Carley and Judge Pope join in this dissent.

DECIDED MARCH 21, 1986 —
REHEARING DENIED APRIL 4, 1986 — 

*Randall L. Hughes, Kim H. Roeder, H. Worthington Lewis,* for Chatham County Hospital Authority & Memorial Medical Center, Inc.

*John H. Parker, Jr.,* for St. Joseph's Hospital, Inc.

*Michael J. Bowers, Attorney General, James P. Googe, Jr., Executive Assistant Attorney General, H. Perry Michael, First Assistant Attorney General, Carol A. Cosgrove, William C. Joy, Senior Assistant Attorneys General, Jeffrey C. Baxter, David C. Will, Assistant Attorneys General,* for State Health Planning Agency.